# Kentucky Central Railway Company v. Smith, &c.

### APPEAL FROM KENTON CIRCUIT COURT.

1. RAILROADS—CARE REQUIRED AT CROSSINGS IN CITIES.—A greater degree of care must be exercised by a railroad company when running its cars on a public street in a town or city than is required to be exercised at the ordinary crossings in the country. And where there are several railroad tracks on a principal street, constantly used, the railroad company is required to use extraordinary care to avoid injuring those who have the same right to use the streets that the company has.

2. SAME—RUNNING SWITCH.—It is negligence *per se* on the part of a railroad company to make a running switch at a public crossing in a populous town or city.

3. WHERE CARS WERE BEING PUSHED IN FRONT OF AN ENGINE AT A PUBLIC CROSSING IN A CITY it was negligence on the part of the railroad company not to have a brakeman or other employe on the front car to warn persons on the street of its approach.

4. SAME—NEGLIGENCE IN FAILING TO HAVE WATCHMAN AT CROSSING. —Where a railroad crossing in a city of 30,000 people was "as much used as any other part of the city" it was negligence on the part of the railroad company not to have a watchman at the crossing.

5. CONTRIBUTORY NEGLIGENCE.—Where a railroad company is guilty of the highest degree of neglect resulting in the injury of a per-

---

*The important question of the negligence of a railroad company in respect to flying switches or detached cars moving by their own momentum is the subject of a note to this case fully reviewing the authorities, in 18 L. R. A., 63.

son crossing its track at a public crossing in a city, the fact that the person injured was guilty of ordinary neglect constitutes no defense to the company.

6. CARE REQUIRED OF CHILDREN.—The plaintiff, a boy about thirteen years old, was only required to exercise that degree of care in crossing defendant's track that an ordinarily prudent child of his age would have exercised.

7. EVIDENCE.—It was not competent for defendant to prove that plaintiff's uncle, with whom he lived, had often warned him to quit playing on the railway tracks at the place where the accident happened ; and even if it was competent to prove such a warning it was not proper to allow a witness to testify that he had heard the uncle state that he had warned plaintiff; for while the statement was made in plaintiff's presence, immediately after the accident, he was then under the influence of an opiate. The uncle himself should have testified.

8. SAME—RIGHT TO HAVE JURY DISCHARGED.—A witness for plaintiff having been asked by defendant's counsel on cross-examination if he did not then have a controversy with defendant, or was hostile to it, he was asked by plaintiff's counsel upon re-examination if he had not recovered a judgment against the company for a large amount. Held—That the defendant was fully protected by the refusal of the court to allow the witness to answer the question, and it was not error to overrule defendant's motion to discharge the jury.

9. VIEW OF PREMISES BY JURY.—As the place of the injury had been fully described by the witnesses, and the jury was sent to view the premises at the close of the testimony, the defendant was not prejudiced by the refusal of the court to send them to view the premises at a particular time during the trial before the testimony closed.

10. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—The defendant was not entitled to a new trial upon the ground of newly discovered evidence, as the witnesses, who it was claimed would give the additional testimony, had either been previously summoned or were employes of the defendant.

11. ADDITIONAL GROUNDS FOR NEW TRIAL can not be filed after motion for new trial has been made and overruled.

GEO. C. LOCKHART FOR APPELLANT.

1. The court had control of its orders and judgments during the term, and, therefore, could at any time during the term set aside its order overruling appellant's motion for a new trial, and permit appellant to file and rely on additional grounds in support of its motion for a new trial.

2. The first instruction is erroneous in that the court instructs the

Kentucky Central Railway Company v. Smith, &c.

jury peremptorily as to a controverted and material fact, that the plaintiff, when injured, was on the intersection of the railway and Washington and Ninth streets, "where he had a right to be," whereas there was evidence introduced by appellant tending to show that the plaintiff, when injured, was not on a public crossing, but was on the railroad tracks between Eighth and Ninth streets, where he was a trespasser.

3. The second instruction is erroneous in that it sets out the acts and omissions which would constitute negligence on the part of defendant, entitling the plaintiff to recover, without any qualification as to the duty imposed by law on the plaintiff in approaching or going on the railroad track. (L., C. & L. R. Co. v. Goetz's Adm'r, 79 Ky., 442.)

4. The plea of contributory negligence involves a confession of negligence on the part of the defendant, and it is self-contradictory to say that the contributory negligence of plaintiff is an available defense *unless* there was negligence on the part of the defendant; yet this is in effect what the court did by its qualification of the instruction as to contributory negligence.

5. It was error to instruct the jury that they could find damages by way of smart money if the injury was attended "by circumstances of aggravation."

6. The refusal of the court to admit the testimony of Dr. Whitaker was error.

HALLAM & MYERS OF COUNSEL ON SAME SIDE.

O'HARA & BRYAN FOR APPELLEE.

1. The court had no power to allow additional grounds for new trial to be filed after the motion for new trial had been overruled, and, therefore, the additional grounds can not be considered. (Houston v. Kidwell, 83 Ky., 302.)

2. It is gross negligence upon the part of a railroad company to make a running switch in a town or city, or to permit detached cars to move at a crossing or at a place where persons are constantly passing about, without having a servant in position to give warning. (Ferguson v. Wisconsin Cent. R. Co., 63 Wis., 145; Butler v. Milwaukee, &c., R. Co., 28 Wis., 487; Ill. Cent. R. Co. v. Baches, 55 Ill., 379; Brown v. N. Y. Cent. R. Co., 32 N. Y., 597; French v. Taunton Branch Railroad, 116 Mass., 537; Greenleaf v. Ill. Cent. R. Co., 29 Iowa, 14; Central Pass. Ry. Co. v. Kuhn, 86 Ky., 589; Shelby's Adm'r v. Cincinnati, &c., R. Co., 85 Ky., 225; L. & N. R. Co. v. Schuster, 10 Ky. Law Rep., 67; Eskridge's Exo'r v. Cincinnati, &c., R. Co., 11 Ky. Law Rep., 558; L. & N. R. Co. v. Potts' Adm'r, 13 Ky. Law Rep., 344; Shearman & Redfield on Negligence, 4 ed., sec. 408.)

3. The failure to look and listen for a train before attempting to cross a railroad track is not negligence. (Louisville, &c., R. Co. v. Goetz's Adm'r, 79 Ky., 442; Ramsey v. Louisville, &c., R. Co., 12 Ky. Law Rep., 560.)

4. It does not lie in the mouth of appellant to complain of any of the instructions. By them its duty was to use only ordinary care.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

At the September term, 1890, of the Kenton Circuit Court the appellee recovered a judgment, based on a verdict, of fifteen thousand dollars for damages on account of personal injuries sustained by him and caused, as is alleged, by the negligence of the appellant, the Kentucky Central Railway Company.

The appellee, on the 7th of August, 1889, at the instance of Mrs. Spotts, who lived at Eighth and Washington streets, in the city of Covington, had gone to purchase bread at the grocery of one Linn, located at the southwest corner of Ninth and Washington streets. Where Ninth street intersects Washington street there are three separate railway tracks laid on the last named street. One of the tracks belonged to the Chesapeake & Ohio road and the two remaining tracks to the appellant, lying west of the Chesapeake & Ohio track. The appellant had a switch on its tracks, the south end of it being, as the proof shows, about one hundred feet from Ninth street. At the time of the injury the appellee (a boy) was about thirteen years of age and was temporarily residing with his uncle, Dr. Kearns, and after he had purchased the bread, in order to reach his uncle's house or that of Mrs. Spotts who had sent him on the errand, he had to cross Washington street. The Chesapeake & Ohio track was west of the tracks of the appellant; and after he had crossed the Chesapeake & Ohio

track, while standing between that track and the tracks
of the appellant, he was struck by the cars of the appel-
lant, knocked down and both legs mashed to a pulp from
his feet beyond each knee.   Surgeons were at once sent
for and both legs amputated above the knee.   It is shown
by the testimony, and in nowise contradicted, that the
place where the injury occurred on these two streets is in
the central part of the city with regard to population,
and was used and passed over by its citizens as much as
any of the other streets.   Both the appellee and the
appellant had the right to the use of the street, with the
duty on the part of the appellee to exercise such ordinary
care and caution as pertains to one of his age to avoid
coming in contact with the cars, and on the part of the
railway company to use the highest degree of care in order
to prevent injuring those who were using the street in
passing, either on foot or in vehicles.   Such a high degree
of care must necessarily attach to every railway company
when operating its cars on the streets of a densely popu-
lated city, and where the travel otherwise than on the
cars of the company is as constant as is usual on such
streets.   The character of the highway and the travel
upon it often determines the degree of care to be exercised
by both the company and the party injured.   A greater
degree of care must be exercised by the company when
running its cars on a public street than is required to be
exercised at the ordinary crossings in the country; and
where there are three railroad tracks on a principal street
constantly used, as is shown in this case, extraordinary
care must be shown on the part of the railroad company
before it can be exempted from liability for injury of
those who have the same right to use the streets that the

company has. It is true the party injured may be guilty of such contributory neglect as to prevent a recovery, and his failure to exercise such care as an ordinarily prudent man would exercise under the circumstances may often be interposed as a defense.

Whether any such defense existed in this case will be first considered. The train of the appellant was made up of the engine and six cars; the train or engine was running backward, and was pushing in advance of it two gondola cars and pulling four box cars; the train was going north, and the purpose was to make a running switch; that is, they were to place the four box cars on another track without stopping the engine or train. While the train was in fact going north, the head of the engine, or the front part, was south. There were on the train at the time of the accident five employes. The engineer and firemen were in the cab of the engine. O'Donnell, the fireman, was on the front part of the engine; that is, between the engine and the box cars that the engine was pulling, and was there for the purpose of separating the box cars from the engine when the signal was given. One of the brakemen was on top of the box cars, and another brakeman setting the switch, or preparing to do so. There was no one on either of the gondola cars that were being pushed north to give warning to those on the street, or those crossing it, of the train's approach, and no watchman stationed at the crossing for that purpose. We shall assume that the bell was ringing to give notice to the passengers of the train's approach; employes on the train so state, and there is no reason for discrediting them. When the time arrived for detaching the box cars the signal was given, and the engine, as the

testimony conduces to show, increasing its speed to get
out of the way of the detached cars; and the boy, being
alarmed by the cry of some one as to his danger, stepped
back near the track of the appellant and was struck by
the car in front that was being pushed north, and man-
gled as already stated.   He had crossed the Chesapeake
& Ohio track on his way with his bread, and while stand-
ing at or near the place of the injury a train passed south
on the track he had the moment before crossed, so there
was a train going south that he had managed to escape,
and one backing north at the same time, but on a different
track, that inflicted the injury; and it seems to us it
would have been difficult for one more prudent and
careful by reason of his advanced years to have heard
the ringing of a bell with these trains under headway,
or to have discovered that the engine fronting the south
was really going north and pushing the gondolas
before it.

It is said that the little fellow was picking up peb-
bles from the street and examining them, and perhaps
he was, but that his life was in peril from the time
he undertook to cross the tracks of these roads is mani-
fest, and one of mature years would probably have met
with the same fate.   But whether so or not, if there had
been a watchman at the crossing, or even a brakeman on
the far end of the gondolas, that was at least sixty feet
from the engine, this accident would have been avoided.
It is true the employes, when they discovered the danger,
used every effort within their power to avoid the injury,
even to the sacrifice of their own lives; and it may be
said that the company, by reason of its neglect in not
having watchmen at these crossings, or in making running

or flying switches in the streets of a densely populated city, is the cause of this injury, and not those who, perhaps, exercised all the caution they could exercise with the employes assigned to this train.

It is an improper use of the streets of a city to so use them by railroad tracks and trains as to prevent the use of the streets for ordinary business purposes, or to use the streets for the purpose of making wild switching that must necessarily endanger the lives of those who are compelled to cross or use them. The elementary books establish the doctrine that it is negligence *per se* on the part of a railroad company to use a running switch in a populous town or city. "The construction and use of a running switch on a highway in the midst of a populous town or village is of itself an act of gross and criminal negligence on the part of the company." (Shearman & Redfield on Negligence, 3d ed., sec. 446; Ky. & Ind. Bridge Co. v. Krieger, 93 Ky., 243.)

In the case of the Illinois Central Railroad Company v. Bache's Adms'r, reported in 55 Ill., 379, it was held that where a running or flying switch was used in a populous part of a city of ten or twelve thousand inhabitants, at a crossing or along an alley used by the public, and the cars thrown upon the side track having a momentum of five miles an hour, from which an injury occurred, the company was guilty of a high degree of negligence, and the fact that signals of alarm were given from the engine employed in the switching, intended for those crossing the track, afforded no excuse. In this case the engine, with the cars attached, caused the injury, and the decided weight of the testimony is that it resulted in the effort to avoid the detached cars and to make the switch-

ing successful. The momentum of the engine, as shown by the plaintiff's testimony, was, after it was detached, eight or ten miles an hour, and from that of the defendant five or six miles an hour, the witnesses for the latter stating that the speed slightly increased when the signal was given. Here, then, was the highest degree of neglect on the part of the company and ordinary neglect on the part of the injured boy, the one scarcely in a condition to judge of his danger, and the other not even exercising ordinary care, when, from the facts, the highest degree of care was required. If railroad companies are permitted to use the streets of a town or city, others who have the right to use them can require that the utmost care shall be used to secure the safety of their persons. This degree of care is rendered necessary by reason of the danger to which persons are exposed who are compelled to use the streets in common with the railway companies.

This rule does not dispense with the duty on the part of one crossing or using the street to use ordinary care and prudence for his own safety, and if he fails to do this and is guilty of gross neglect, as well as the party injuring him, and but for which the accident would not have happened, he can not recover. (Ferguson v. Wisconsin Central Road, 63 Wis., 145.) We have been referred to no authority by counsel in which a recovery has been denied upon such a state of case as this, or in cases where the facts conduce to show such gross neglect on the part of the company. The neglect consists, first, in the company making flying switches in the street; second, in not having a brakeman or some other employe on the front gondola; and, lastly, in not having a watchman at a crossing used, to use the language of a witness, as much by the

people in passing *as any other part of the city*, with a population of thirty thousand.

It is contended by counsel for the appellee that the instructions form no part of the record. After the verdict a motion for a new trial was made within the three days, as provided by section 342 of the Code; that motion was heard and overruled by the court. The appellant then moved to set aside the order overruling the motion, to enable it to file other grounds, and that motion prevailed over the objections of counsel for the appellee. Section 343 of the Code provides that the motion must be by written grounds filed at the time of making the motion, and section 342 provides that it must be done within three days after the verdict, unless unavoidably prevented, making as an exception the cause mentioned in subsection 7 of section 340. By an amendment, where there is *a special verdict*, the grounds must be filed within three days after the judgment on the special finding. The object of requiring the motion to be made within the three days is to enable the court to render a judgment without delay, and when the facts and questions of law are fresh in the minds of court and counsel; and it is the evident meaning and purpose of the Code to close the door to any other motion for a new trial upon any other grounds than the exceptions made, unless unavoidably prevented. Such, too, is a safe construction of this provision of the Code; for if motions are permitted to be renewed from day to day during the term, the time of the court would be consumed in hearing motions for new trials, for amendments would likely be allowed whenever the minds of counsel suggested some additional reason for another hearing. This court, in Houston v. Kidwell, 83 Ky., 301, adjudged

that additional grounds might be filed after the three days, but was careful to say that such additional grounds must be filed *before the motion for a new trial was disposed of*; and this construction was given with some doubt.

It is true the court may, as a general rule, set aside orders made during the same term at which they were entered, and, under this well-recognized rule of practice, may set aside the order refusing a new trial and grant one; but to permit counsel, after the motion has been overruled, to file other grounds, is in violation of the spirit and meaning of the Code. Counsel realized, doubtless, that the instructions given by the court were more favorable to the appellant than the law authorized, as the employes were confined to the exercise of ordinary care and required only to give warning of the train's approach by bell or whistle, when neither, if shown to have been given, would have exempted the company from responsibility. The court also in effect said to the jury that if the appellee was guilty of negligence he could not recover, if but for the negligence the injury would not have been sustained, unless the appellant became aware of the danger, and by the exercise of ordinary care could have avoided the injury. This boy was only required to exercise that degree of care that an ordinarily prudent child of his age would have exercised, and if he exposed himself to danger in such a manner as that the injury could not be avoided by the defendant by the exercise of the proper care to prevent it, no recovery should be had; but if the child was on the street or crossing, where it had the right to be, and was injured by reason of the gross neglect of the defendant, although guilty himself of ordinary neglect, looking to one of his age and inexperience, a recovery

must necessarily follow. So the instructions could not be complained of if in the record.

There were some objections made to the action of the court during the progress of the trial that will not be considered, as there was no abuse of discretion and no harm resulting from such action.

The appellant offered to prove by a witness that at the time the legs of the appellee were amputated, Dr. Kearns, uncle of the plaintiff, said, " he had often warned plaintiff to quit playing on the railway tracks at the place where the accident happened." This offer was refused for two reasons. Dr. Kearns could himself have testified, and, besides, it was incompetent. The boy was then under the influence of morphine, and, if not, it was incompetent, as it could not have affected the result and in nowise lessened the care to be exercised by the appellant, or increased that to be exercised by the appellee.

A witness was asked, on cross-examination by defendant's counsel, if he did not then have a controversy with the defendant, or was hostile to it, and when re-examined by the plaintiff's counsel was asked if he had not recovered a judgment for $12,500. The question was objected to and the court refused to allow the witness to answer, and thereupon counsel for the defense moved to set aside the swearing of the jury, and the motion was overruled. The court, it seems to us, fully protected the rights of the defense in requiring the witness not to answer.

There was an objection and an exception taken to the action of the court in refusing to send the jury to view the premises at a particular time during the trial and before the testimony closed. The court refused to do this, but at the close of the testimony sent the jury to

view the premises.    The place of the injury had been fully described by the witnesses; no misconduct is alleged to have taken place on the part of the jury; facts constituting the neglect have been clearly established, and we perceive no reason for reversing the cause on that ground.

Some affidavits were filed showing the importance of other testimony, discovered after the trial had closed, and it appearing that these witnesses had been previously summoned, except one, who was an employe of the company, the court refused to open the case.    There was no error in this regard.

The judgment is affirmed.