## Continental Coal Corporation, et al. v. Cole's Admr.

(Decided February 16, 1912.)

### Appeal from Bell Circuit Court.

1. Appeals—Judgment—Motion and Grounds for New Trial—Errors. —Where a motion for a new trial is overruled, and exception saved, and an appeal prayed and granted from the judgment on the verdict, and the statement on appeal designates that as the judgment appealed from, the appeal is properly brought; and every ruling of the court at the trial that is excepted to and made one of the grounds for a new trial, may be reviewed on the appeal.

2. New Trial—Motion to Discharge Jury—Principal Witness Drunk and Fined and Imprisoned for Contempt.—In an action for damages for the death of a person killed in a mine against a coal company and its assistant foreman, the latter being no longer in its employ and being insolvent, took no interest in the case, but had to be subpoenaed like any other witness. He was the company's only witness on the turning point of the case, and was the man on whose negligence the action was based. Counsel for the company cautioned him to remain sober. He failed to appear when called as a witness. An attachment was obtained. He was brought into court under arrest. He was in an intoxicated condition. His condition and manner were such that the court fined and imprisoned him. Counsel for coal company moved to discharge the jury and impanel a new jury. The motion was overruled. The trial proceeded. Other witnesses were heard. After being in jail for four hours, the assistant foreman returned and testified. The jury returned a verdict of $15,000.00 for plaintiff. Held, that ordinarily parties to an action must take their chances

on the appearance, condition and conduct of their witnesses, but that under the peculiar facts of this case considered in connection with the unusually large verdict, a new trial should have been granted.

3.   Damages—Punitive—Instructions.—Where the assistant foreman of a mine directs a party of men who had come to the mine to seek employment to go out through a new entry where blasting was going on, without notifying them of the danger, his negligence is such as to import a wanton and reckless disregard for the lives and safety of the men; and in such a case an instruction authorizing the recovery of punitive damages is proper.

D. E. LOGAN for appellants.

B. B. GOLDEN, W. T. DAVIS and C. C. WILLIAMS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, T. G. Cole, as administrator of the estate of W. P. Cole, deceased, brought this action against the defendants, Continental Coal Corporation, of Tennessee, and Robert Mattingly, to recover damages for the death of his intestate, which is alleged to have resulted from the gross negligence of the defendants. From a verdict and judgment in favor of plaintiff for the sum of $15,000, the defendants appeal.

The coal company operates a mine in Bell County. In January, 1909, it contracted with one Matt Anderson, to cut a new entry. The entry as first cut was not as high as the contract required. He then began blasting down the roof so as to make it higher. While this work was going on, the intestate, W. P. Cole, Harlan Hounchell and John Miller, who were miners, applied to the company for work. The defendant, Robert Mattingly, took them into the mine, and showed them where he could put them to work. They accepted employment, and said that they would go out and get their tools and return to work at dinner time. Miller then suggesed that he would like to see his brother who was at work in the mine. As to what followed the evidence is conflicting. According to the evidence for the plaintiff, Mattingly said he would take them to see Miller's brother; and that that was a near way out. When they reached a place near where Miller's brother was at work, and which was opposite the new entry, he pointed with his hand in that direction, and told them to go out there. When they reached the place where James Miller, the brother

of John, was at work, Mattingly was called off. As he left, he told the men that when they got through the curtain at the new entry, they could see daylight, and would have no trouble in going on out that way. After spending a few minutes with James Miller, they started out through the new entry. Just as they entered the entry, Anderson lighted a fuse to set off a blast. When the men reached a place just opposite the fuse, the blast went off and threw down a mass of rock, which struck and killed Cole and Hounchell, and injured Miller. Plaintiff's evidence further shows that although Mattingly knew of the blasting and of the danger of going out that way, he gave the men no warning whatever. On the other hand, the evidence for the defendants is to the effect that Mattingly insisted that the men should leave the mine without going by to see James Miller, and that he never said anything to them about going out through the new entry.

The foregoing facts are sufficient for the purposes of this appeal. For a more detailed statement of the facts, see the case of Continental Coal Corporation v. Hounchell's Admr., 141 Ky., 107, where a judgment for plaintiff in the sum of $3,000 was affirmed.

Before proceeding to consider the grounds relied upon for a reversal, it will be necessary to refer to appellee's contention that the order overruling the motion for a new trial is not appealed from, but the appeal is prosecuted from the judgment on the verdict, whereas, no exception was saved to the judgment, and no appeal granted therefrom. It is, therefore, insisted that the appeal can not be considered at all, or if considered, the only question is, do the pleadings support the judgment? In support of this proposition, counsel for appellee rely on the case of Harper v. Harper, 10 Bush, 447. In that case, the court simply discussed the well recognized rule that where an appeal is prosecuted from a judgment on a verdict without a motion for a new trial having been made and overruled, nothing is brought before this court except the pleadings, verdict and judgment; and if the pleadings and verdict authorized the judgment rendered, it will be affirmed without regard to the rulings of the court at the trial further than they appear in the judgment. In the case before us, however, there was a motion for a new trial. This motion was overruled, the order reciting, "and the same being considered by the court was overruled, to which the said defendants

excepted, and thereupon defendants prayed an appeal to the Court of Appeals from the judgment herein, which is granted, etc." The judgment on the verdict had theretofore been entered. This is the judgment from which an appeal was prayed and granted, and the judgment which it is sought to have reversed. Manifestly the proper judgment is appealed from, and there being a motion for a new trial which was overruled, all the rulings of the trial court which were excepted to and relied upon by defendants in their motion and grounds for a new trial, are subject to review by this court.

Among the grounds relied upon for a new trial, is the failure of the trial court to discharge the jury and impanel a new jury for the trial of the case, when Robert Mattingly, the coal company's chief witness, was brought into court in an intoxicated condition and was fined and sent to jail for contempt. According to the affidavits of counsel on each side, the occurrence complained of took place under the following circumstances. Mattingly was the coal company's assistant foreman at the time of the explosion, and is the man who, it is claimed, told the men to go out through the new entry where the blasting was going on, without warning them of the danger. He was the company's only witness on this point. At the time of the trial he was wholly insolvent and was no longer in the company's employment. Though jointly sued with the coal company, he had never manifested any interest in the case, but had to be subpoenaed like any other witness. On the day before he was to testify, counsel for the company saw him and cautioned him particularly not to get drunk but to remain sober so that he could appear the next morning and testify. The next morning, he failed to appear. Counsel for the coal company applied for an attachment, and stated in the presence of the court and jury that it might be when the witness came in, he would be drunk; that he had cautioned him to remain sober, and had had to summon him in order to procure his attendance. An attachment was issued, and in pursuance thereof, Mattingly was brought into court in an intoxicated condition, and was unable to testify. Upon inquiry by the court in the presence of the jury as to the cause of his absence and the amount of whiskey he had drunk, his answers were such that the court in the presence of the jury committed him to jail for contempt, and ordered him into the custoday of the jailer. While in the custody of the officer,

and before leaving the court room, he in his drunken condition, committed further contempt by remarks to and about the court, for which he was fined by the court. He was then taken from the court room in the custody of the officer, and placed in jail. Thereupon counsel for the coal company moved the court to discharge the jury, and impanel a new jury to try the case. The motion was overruled, and the trial proceeded. By agreement the testimony of other witnesses was heard. After being in jail for about four hours, Mattingly returned to the court room and testified. Upon submission of the case, the jury returned a verdict in favor of plaintiff for $15,000.

While ordinarily parties to an action must take their chances on the appearance, condition and conduct of their witnesses, this case, we think, presents some peculiar features which take it out of the general rule. Here the witness, though he had been the coal company's assistant foreman, was no longer in its employ. While a joint defendant, he was not financially responsible, and, therefore, took no interest in the case, and had to be subpoenaed as any other witness. He was not intoxicated by the connivance of the coal company. On the contrary, it tried to keep him sober. He was the company's principal and only witness upon the turning point in the case. Not only so, but he was the very foreman whose gross negligence, it is claimed, caused the death of two men, and injury to a third. To secure his attendance, he had to be arrested. When arrested and brought into court he was drunk. His appearance, conduct and remarks in the presence of the jury and court were such as to justify a fine and jail sentence for contempt. While he was languishing in jail for contempt of court in the presence of the jury that was to pass on his negligence, other witnesses detailed the circumstances of the horrible tragedy that resulted in the death of two men. Counsel for plaintiff took advantage of the opportunity to comment not only on the negligence but the criminal negligence of the witness, thus leaving it to the jury to infer that a man who would appear in court and conduct himself in a manner deserving of a fine and jail sentence for contempt would not hesitate at anything, much less than an act showing a wanton disregard for human life. The effect upon the jury may well be imagined. Such a scene was calculated to excite prejudice and passion, and to deprive the members of

the jury of that poise of mind so essential to a fair and just consideration of a case. Nor, in reaching this conclusion, are we left to mere conjecture, for the effect upon the jury is reflected to some extent, at least, in the unusually large verdict in this kind of a case. Nor do we think the effect upon the jury was discounted by the statement of counsel for the coal company that it might be when the witness came in, he would be drunk; for the mere expectation that he would appear in an intoxicated condition could not have influenced the minds of the jurymen to the same extent as his actual appearance in that condition and his subsequent and well-deserved punishment for contempt. Therefore, under the peculiar circumstances of this case, we conclude that the ends of justice will be best subserved by granting to the defendants a new trial.

We conclude that it was not error to give an instruction authorizing the recovery of exemplary damages. According to plaintiff's evidence, the assistant foreman directed the men to go out through the new entry where he knew that blasting was going on, without giving them any warning of the danger. If that be true, his negligence was such as to import a wanton and reckless disregard for their lives and safety. In such a case, a punitive damage instruction is proper. (L. & N. R. R. Co. v. Wilkins, Guardian, 143 Ky., 572.) Judgment reversed and cause remanded for a new trial consistent with this opinion.