## Louisville & Nashville Railroad Company v. Allnutt, By, et al.

(Decided December 3, 1912).

Appeal from Kenton Circuit Court
(Common Law & Equity Division).

1.  Railroads—Personal Injury—Degree of Care Required of Children.—A child is only required to exercise such care as children of his age, experience and discretion ordinarily exercise under the same or similar circumstances. They are not held to the same

degree of care as adults are, and the degree of contributory negligence that might defeat a recovery on the part of an adult will not excuse an injury to a child.

2. Railroads—Duty to Public at Crossings.—A railroad company is required to exercise such care in the movement of its trains at public crossings as will afford reasonably sufficient protection to the public, and it must take notice of the location, the use and the character of public crossings, and exercise that degree of care at each of them that may be necessary to perform its legal duties. A larger measure of care is required at some crossings than at others, but at each crossing the company must exercise such a measure of care as will afford reasonable protection to the public.

3. Railroads—Evidence of Use of Crossings.—For the purpose of showing the measure of duty the railroad company owes, and the notice of this duty it will be presumed to have, evidence may be introduced to show the character of the crossing, the conditions existing, and the use of it by the public, not only at the time of the accident under investigation, but for a reasonable time before.

4. Railroads—Crossings—Watchmen—When Not Sufficient Protection at.—At some crossings a watchman who performs his duty might relieve the company from the other duties of lookout, warning and reasonable speed, but at a dangerous crossing in a populous city one watchman is not sufficient protection at hours of the day when the crossing is used by crowds of school children.

5. Railroads—Crossings—Pushing Cars.—It is gross negligence to push cars, without any person in control of them, over a street crossing at a time when school children are using it; although the crossing may be protected by a watchman.

6. Negligence—Gross Negligence—Punitive Damages.—In personal injury cases when the act that causes the injury complained of is intentionally or maliciously done, or the injury is the result of a careless or wanton disregard of the rights or safety of others on the part of the wrong-doer, this is gross negligence, and entitles the injured party to punitive damages.

S. D. ROUSE and BENJ. D. WARFIELD for appellant.

WM. A. BYRNE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In November, 1908, the appellee, Allie Allnutt, then about eight years old, was run over by one of the cars of the appellant company, and, as a result, lost both of his legs. To recover damages for the injury thus sustained he brought this suit against the appellant company, and on the first trial of the case the damages in his favor were assessed by the jury at $19,000, but a motion for a new trial on behalf of the railroad company was sustained, and this verdict set aside.

On the second trial there was a verdict in favor of appellee for $5,000, and this verdict, on his motion, was set aside. On the trial from which this appeal is prosecuted there was a verdict and judgment in favor of appellee for $11,750. To the ruling of the court in setting aside the first judgment the appellee excepted and prepared, in regular form, a bill of exceptions and transcript of the evidence. To the ruling of the court in setting aside the second judgment the appellant excepted and prepared, in due form, a bill of exceptions and transcript of the evidence. So that the record on this appeal consists of the record made up on each of the three trials, and we are asked by appellant to reverse the judgment on the last trial and direct the entry of a judgment on the verdict on the second trial, upon the ground that the trial court improperly set aside the verdict on that trial.

On the other hand, we are asked by appellee to direct the lower court to enter a judgment for the amount of the verdict on the first trial, upon the theory that the court improperly set aside that verdict, but if this can not be done, that the judgment on the last trial be affirmed. As we have concluded to affirm the judgment on the last trial, it does not seem necessary to notice the arguments of counsel in respect to the preceding trials, but we may say that the discrepancy between the amount of the verdict on the first and second trials is largely accounted for by the fact that on the second trial the court refused to instruct the jury that they might award punitive damages.

Except in one particular, there is little controversy about the facts of this case. Latonia is a city of several thousand people, and one of the principal, if not indeed the principal street in the city is Southern avenue, which is crossed by the tracks of the appellant railroad company. At the point where the railroad crosses this avenue there were, when the accident happened, seventeen separate tracks in use by the railroad company, covering a space of some 200 feet in width across the avenue. At virtually all hours of the day there were trains, sometimes two or three of them at the same time, moving on the tracks across the avenue, and hundreds of people, in using this avenue each day, on foot and in vehicles, had to cross all of these tracks.

Including the public who made use of this street and who were required to cross these tracks, were a large

number of school children who lived on the west side
of the railroad and attended two schools that were sit-
uated on the east side of the railroad, and when these
children were going to school in the morning and re-
turning in the afternoon this avenue, where it crosses
the railroad tracks, was crowded with children, romp-
ing, running and playing, as school children usually do.

On the day Allie Allnutt was injured he was return-
ing about four o'clock in the afternoon from school on
the east side of the tracks to his home on the west side,
in company with a crowd of children. The evidence in
his behalf shows that when he got to the eastern track
Blackburn, the crossing watchman for the railroad com-
pany, was standing about the middle of the crossing,
and between the tracks, not engaged at the time in
warning the children that there was danger from mov-
ing trains—merely standing at his post. That appellee
and other children, who were in his immediate company,
walked or ran by Blackburn, without any notice or
warning from him, and that when appellee had passed
Blackburn and gotten to the last track on the west side,
Blackburn halloed at him, when he turned around, and
as he did so, stumped his toe and fell on the track, and
about that time Blackburn, who had discovered that the
child was going on the track in front of the moving
train, made an effort to rescue him, and in the attempt
fell on him, and just as appellee fell on the track a
freight car, pushed by an engine, ran over his legs.

The evidence for the railroad company is, in sub-
stance, that Blackburn, when he saw the children com-
ing toward the track on the east side, went to meet them,
for the purpose of stopping them from crossing, as a
train was switching on the western track; that some of
the children stopped, in obedience to his request or or-
der, and some of them, including Allie Allnutt, ran by
him; that when his attention was called to the fact that
some of the children had gone by him, and in the direc-
tion of the moving train, he ran after them and caught
Allie Allnutt, just as he got on the track in front of the
moving cars, and in his effort to save him came very
near being run over himself.

The car that ran over the child was the front car of
a cut of six cars being pushed by an engine, and it had
been uncoupled from the car behind it for the purpose
of "kicking" it into a siding, towards which the engine
was pushing it. There was no brakeman or other em-

ploye of the company on the car or cut of cars, nor was there any alarm or warning of the movement of the train by the ringing of the engine bell or other means. As the car had been disconnected from the engine and the car immediately behind it, of course the engineer could not control the movement of the car, and the condition was practically the same as if this car had been started by a movement of the engine across the avenue and was running without any person in control of it.

The grounds relied on for a new trial are: (1) That the court erred in refusing to direct a verdict for the railroad company; (2) that the verdict is flagrantly against the evidence; (3) that error was committed in permitting witnesses Oliver, Neidlander, Braines and Huff to testify as to customary conditions at the crossing; (4) that the court erred in refusing to permit Johnson to testify as to the distance in which the car could have been stopped; (5) that error was committed in the instruction.

Concerning the grounds that a peremptory instruction should have been given, or that the verdict should have been set aside as flagrantly against the evidence, little need be said. There was ample evidence to take the case to the jury and to sustain the verdict. According to the evidence for appellee, he did not discover the moving engine and cars until he was in the act of crossing the track on which they were running, and did not have any warning from Blackburn or anyone else of the movement of the train. It is true the car that ran over appellee was moving at a slow rate of speed and that if he had been careful he could have seen it, but a child of eight years is not charged with the same degree of care for his own safety as an adult would be. It is probable that a grown person in crossing these tracks would keep a sharp lookout for the movement of trains, and in view of the danger attending the crossing would have exercised unusual care for his own safety. But unless appellee was given such warning or notice of the movement of the train as would be reasonably sufficient to prevent a child of his years from putting himself in a place of peril, the railroad company cannot escape responsibility for the accident that befell him upon the ground that except for his contributory negligence it would not have happened.

The warning or notice that might be amply sufficient in the case of a grown person might be entirely inade-

quate and insufficient in the case of a child of eight years, and, therefore, to excuse the railroad company as a matter of law from blame for an accident like this, under the conditions existing when it happened, the evidence should show that appellee was given such warning as would be reasonably sufficient to put a child of his years upon notice of the danger, and this the evidence does not do. On the contrary, the evidence for appellee shows that he received no notice or warning from the watchman until he was on the track in front of the moving car, and too late to escape injury and that there was no one on the car to warn him of his peril. This being so the question was for the jury and they were instructed that if they believed "from the evidence that at the time and place of the accident to the plaintiff mentioned in the evidence, but before the plaintiff had gone upon the railroad track upon which he was injured, the plaintiff knew, or by the exercise of ordinary care could have known, of the approach of the car by which he was injured, upon said track to the crossing at said place, and that thereafter plaintiff went upon said railroad track in front of said approaching car and was run over and injured by it, and if the jury shall further believe from the evidence that the act of the plaintiff, in going upon said railroad track under such circumstances as the jury shall believe from the evidence then and there existed, was a failure on the part of the plaintiff to exercise such care as children of his age, experience and discretion ordinarily exercise under the same or similar circumstances, the jury shall find a verdict for the defendant."

In our opinion this instruction correctly submitted to the jury the proper measure of care it was incumbent upon appellee to exercise for his own safety. City of Owensboro v. York, 117 Ky., 294; Kentucky Hotel Co. v. Camp, 97 Ky., 425; Davis v. Ohio Valley B. & T. Co., 127 Ky., 800; Smith v. National C. & T. Co., 135 Ky., 671.

The witnesses Oliver, Neidlander, Braines and Huff were permitted by the trial court, over the objection of counsel for appellant, to testify as to the use of this crossing by the public on and for a reasonable time continuously before the day of the accident and as to the number of trains that used the tracks at the crossing at the time of the accident and for sometime before, and they said that at the time of the accident, and for many

months before, this crossing was used every day by great numbers of people, on foot and in vehicles, and that crowds of school children used it in the morning and afternoon in going to and returning from school. They further said that trains and cars were almost continually moving upon some of the tracks at this crossing, and that sometimes as many as two and three trains would be moving at the same time.

This evidence was entirely competent for the purpose of showing the dangerous character of this crossing and the duty that the railroad company was under to have it so protected as to give reasonably sufficient warning to the traveling public of the danger attending its use. In cases like this a railroad company is chargeable with knowledge of the duty it owes of exercising such care as may be required to afford reasonably sufficient protection to the public. It must take notice, as other people do, of the location, use and character of public crossings, and exercise that degree of care at each of them that may be necessary to perform its legal duty. This duty, in many cases, is larger than it is in others, and for the purpose of showing the measure of duty the railroad company owes, and the notice of this duty it will be presumed to have, evidence may be introduced to show the character of the crossing, the conditions existing, and the use of it by the public, not only at the time of the accident under investigation but for a reasonable time before.

It also complained that the court committed error in refusing to permit Frank Johnson, an employe of the company, to testify in what space the car could have been stopped, if a man had been on the car at the brake at the time the appellee was injured. We are not entirely prepared to say that this evidence should not have been admitted as a circumstance tending to show that if one of the employes of the company had been on the car, he could not have averted the accident. But it is very clear that this evidence had no material bearing on the case, for if it should be assumed or even admitted that a man in charge of the car could not have stopped it in time to have saved appellee after he came on the track, it would not in any degree lessen the liability of the company. The duty it was under to have some person on the car was not limited to the efforts this person might make in stopping the car, but extended to the efforts he might have made to warn appellee not to go on

the track. It is quite probable from the evidence that when appellee got on the track the car could not have been stopped in time to avoid running over him, but if there had been a person on the car he might have prevented the child from getting on the track. In any event we are satisfied that the exclusion of this evidence did not prejudice the rights of the company.

Much complaint is made of the instruction defining the duty of the company. This instruction reads in part as follows: "In the operation of the defendant's engine and cars or trains over the said crossing it was the duty of the defendant's agents or servants in control of its engine, cars or trains to give reasonable and timely warning, by the ringing of a bell or the blowing of a whistle, of the approach of its engine or cars or trains to said crossing to persons upon or about to go upon said crossing, and in backing cars across said crossing it was the duty of the defendant to have some one stationed upon the cars in such a position that he could discover the presence of persons upon or about to go upon the crossing, for the purpose of giving warning of the approach of the cars, and for the purpose of avoiding injury to persons in peril or apparent peril of being struck by the cars, if in the management of the cars after the discovery of their peril or apparent peril, those in control of the movement of the cars could, by all reasonable means at their command, stop the car and avoid injury to them. If the crossing was an unusually dangerous one, it was the duty of the defendant to provide a watchman or watchmen reasonably sufficient to give reasonable and timely warning to the public using said crossing of the approach of trains."

The objections urged to this instruction are that it imposed upon the railroad company the duty: (1) of giving warning of the approach of the train by ringing the bell or blowing the whistle; (2) of having some one stationed on the car which ran over the appellee; (3) of having one or more watchmen at the crossing, if this was necessary to reasonably protect it. In support of these objections the argument is made by counsel "that at a crossing where a flagman is maintained the duty imposed upon him supersedes the other specified duties as to such crossings where no flagman is maintained. In other words, having a flagman at the crossing is the most extraordinary precaution that a railroad company can take. * * * Where this is done, and where the

flagman performs the duties imposed upon him * * * the railroad company, through said flagman, has performed its full duty in the way of affording both warning and protection to the highway traveler on the cross-ing."

The effect of this argument, as we understand it, is, that when a railroad company has a watchman stationed at a crossing, the presence of this watchman, if he performs his duty, relieves it from the duty of ringing the bell, sounding the whistle, or having a man on a car that is being pushed in front of an engine or backed by an engine over the crossing, and from operating its train over the crossing at a reasonable rate of speed, and from keeping a lookout for the presence of travelers. Or, in other words, when a railroad company has a watchman stationed at a crossing, however dangerous the crossing may be, or however great the number of people who may use it, it may run its trains without notice or warning of any kind other than such as the watchman may be able to give, and may back or push cars without any person on them to control their movements or give warning to persons about to get on the track, and may run them at any speed it pleases.

We are unable to agree with counsel in this conception of the duty that a railroad company owes at a crossing like the one in question. At some crossings one watchman who fully performed his duty might be legally sufficient, and the company might be relieved from the performance of the other duties it usually owes to the public at crossings. At other crossings a compliance with the statutory duties of ringing the bell and blowing the whistle and in addition keeping a lookout, and running at a reasonable speed, might fulfill its duty without a watchman. Again at other crossings its duty might require it to have a watchman, to give warning of the movement of trains and also to have a person stationed on cars being backed or pushed, and at yet other crossings gates might be necessary. No exact measure of duty can be laid down that would be applicable to all crossings. At each public crossing the railroad company must use that degree of care that is reasonably sufficient for the purpose of giving notice and warning of the movement of trains and cars to the public having the right to use the crossing, and this degree of care depends on the situation and surroundings of the crossing, the number of trains using it, and the num-

ber of the public who use it. Cincinnati, New Orleans & Texas Pacific Ry. Co. v. Champ, 31 Ky. Law Rep., 1054; Kentucky Central R. R. Co. v. Smith, 93 Ky., 449; Central Passenger Ry. Co. v. Kuhn, 86 Ky., 578; L. & N. R. R. Co. v. Popp, 96 Ky., 99.

Having this view of the duty a railroad owes at a public crossing, we think the court correctly advised the jury that it was the duty of the railroad company to exercise such care as was reasonably sufficient to protect the crossing, although this duty might require it to employ the means pointed out in the instruction. Under the undisputed facts the crossing was an exceptionally dangerous one, and it cannot be said, as a matter of law, that having a watchman alone, or ringing the bell or blowing the whistle alone, or having a man stationed on the moving cars alone, would be an adequate performance of its duty, or that all of these precautions were not necessary to afford reasonable protection to the public.

It is further insisted that it was error to instruct the jury that they might, in addition to compensatory, award punitive damages. In a number of cases we have ruled that in personal injury cases punitive damages are only allowable unless the act that caused the injury complained of was intentionally or maliciously done, or the injury was the result of a reckless or wanton disregard of the rights or safety of others on the part of the wrongdoer. Louisville & Nashville R. R. Co. v. Wilkins, 143 Ky., 572; Continental Coal Corporation v. Cole, 146 Ky., 821; Straight Creek Coal Co. v. Huddleston, 147 Ky., 94; C., N. O. & T. P. Ry. Co. v. Ackerman, 148 Ky., 435.

This is the degree or quality of conduct that constitutes, in the meaning of the law, gross negligence, entitling the injured party to more than compensatory damages, and whenever the trial court is of the opinion that the pleadings and evidence show that the wrongdoer has been guilty of the character of conduct above described, he should instruct the jury on the subject of punitive damages. With this definition of what constitutes gross negligence entitling the injured party to punitive damages, it only remains to be seen whether or not the evidence justified the instruction on this subject.

It is true the railroad company had a watchman at this crossing, but this is the only care it exercised to protect the public, having the right to use it, from in-

jury by moving trains, and it is apparent from the evidence that the presence of this watchman was entirely inadequate to afford reasonably sufficient protection to the public at the time appellee was injured. It is probable that at some times during the day he could adequately guard the crossing, and it is likely that if its use had been confined to adults he could have given them sufficient notice and warning to save them from injury. But the evidence shows, and the railroad company should be charged with notice of it, that this crossing, during the morning, as well as in the afternoon, was crowded with school children going to and returning from school, and during the time the crossing was used by these children their safety demanded more efficient protection than one watchman could afford. The presence of the watchman did not lessen the other duties it owed to the public at this time in moving its trains, or excuse it from exercising the same care it would be required to exercise if no watchman had been stationed there.

This being our view of the duty the company owed at the time appellee was injured, it follows that it was such a reckless disregard of the safety of the children using the crossing as amounted to gross negligence to push a train of cars over the crossing without bell or whistle sounding, or without any person on the cars to control or give notice or warning of their movement. We have so written in a number of cases. Peltier v. L. & N. R. R. Co., 16 Ky. L. R., 500; L. & N. R. R. Co. v. Potts, 92 Ky., 30; Conley v. C., N. O. & T. P. Ry. Co., 89 Ky., 402; Kentucky Central Ry. Co. v. Smith, 93 Ky., 449; C., N. O. & T. P. Ry. Co. v. Ackerman, 148 Ky., 435.

The judgment is affirmed.