Case 28.—ACTION  BY  GIBSON  PERKINS  AGAINST  THE CHESAPEAKE  &  OHIO  RAILWAY  CO.  FOR  DAMAGES FOR PERSONAL INJURIES.—June 12.

## Perkins v. Chesapeake & Ohio Ry. Co.

123   229
134   722

Appeal from Lawrence Circuit Court.

S. G. KINNER, Circuit Judge.

Judgment for Defendant.   Plaintiff appeals.   Reversed.

1. Railroads—Negligence—Injuries to Person on Track—Actions— Sufficiency of Evidence.—In an action against a railroad for injuries to plaintiff while on the track at defendant's depot, evidence held to show negligence on defendant's part.

2.—Same—Contributory Negligence—Question for Jury.—Where, in an action against a railroad for injuries received by plaintiff while crossing defendant's track at a place where its patrons had been constantly crossing for the purpose of taking passage on its trains, and of securing refreshments at the restaurants in its depot, the evidence showed that the place where plaintiff was injured was one where persons were constantly passing about and across the track, especially at the time of the arrival and departure of passenger trains; that there was neither a lookout kept by defendant for persons on the track nor any signals given to warn them of the approach of danger, and that plaintiff at the time was on his way to board one of defendant's trains about to leave the station, it could not be said as a matter of law that plaintiff was guilty of contributory

negligence precluding a recovery by reason of his failure to look along the track in the direction from whence the engine which struck him was coming before attempting to cross.

JOHN W. WOOD and GREENE & VANWINKLE for appellant and W. H. WADSWORTH and WORTHINGTON & COCHRAN for appellee.

(No briefs. Record out of office.)

OPINION OF THE COURT BY JUDGE NUNN.—Reversing.

This action was brought by the appellant against the appellee for damages for injuries inflicted upon him by the negligence of its servants and agents.

It was alleged, in substance, in the petition, that when the appellant was walking across Railroad street, a public street in the city of Ashland, on appellee's track, at its passenger station in that city, and when he was at a place in the street and on the track where people were constantly using the same as a public passway, and while he was on his way to take passage on one of appellee's passenger trains, at that time about to leave the station, he was struck by a tender and engine of the appellee, knocked down, and dragged by the tender and engine, a distance of more than 125 feet. The appellant continued by describing the extent and character of his injuries, and then averred that his injuries were caused by the carelessness and negligence of the appellee, its agents and employes in so carelessly and negligently operating and managing the tender, engine, and cars. The appellee answered denying the allegations in the petition, and pleaded contributory negligence on the part of appellant. To this plea a reply was filed. Upon the trial of the case, and after appellant's testimony was heard, the court gave a peremptory instruction to the jury to find for the appellee, and from this action of the court the appellant appeals.

It appears from the record that Ashland is a city of 8,000 to 12,000 inhabitants. Appellee's trains pass

through it east and west along what is known as
"Railroad Street or Alley." Its depot is situated be-
tween Thirteenth and Fourteenth streets, which run
out south from the river. Appellee has two tracks up-
on this street, where it passes the depot. On the south
of this street, and abutting thereon, there are at least
two business houses or restaurants, and a dwelling
or two.   One of the restaurants is on the corner of
Thirteenth and Railroad streets; the other is some-
thing near the center of the block between Thirteenth
and Fourteenth streets.    The proof shows that there
was much travel over this Railroad street, hundreds
passing over it daily, usually large crowds were upon
it at the time of arrival and departure of passenger
trains. On the morning of the day appellant was in-
jured, he arrived at that depot from a visit to his son.
who lived in Ohio, the train which would carry him
to his home in Lawrence county, was not due to leave
until about 1 p. m. He went out of the city a short
distance to visit a relative, and returned to the depot
about the time his train was due. He went to this
restaurant, which was near the center of the block,
to get a bundle he had left there that morning; before
entering the restaurant he noticed that his train was
just pulling into the depot and on the track
nearest the depot.   He looked up and down
the track nearest to the restaurant, and did not see a
train approaching from either direction. He then went
into the restaurant, got his bundle and was there, as
he says, about a minute and a half and started directly
to the passenger train to get aboard. In going from
the restaurant to this train he took a diagonal course,
moving rather eastwardly. He stated that it took him
five or six steps to reach the first track, and took six
or seven steps along the track, when he heard some
person halloo, and at that instant he was struck by the
tender of appellee's engine, and was thrown down; he
caught with his hands a board that was placed upon

the end of the tender, and was dragged more than 125 feet before the engine was stopped. He stated that as he came out of the restaurant he looked east, but did not look west, for an approaching train. He stated that he looked west before entering the restaurant and could see a long ways, but could not see anything on the track. The proof tends to show that this engine was backing east, pulling six or seven cars with the tender in front; that there was no one standing on the board in front of the tender, or on the tender; that no whistle was sounded or bell rung or any warning given of the approach of the train; that the engineer, fireman, and yardmaster were in the cab of the engine; that neither of them were keeping a lookout, or making any effort to notice what was in front of them; that the only way anything in front of them could be seen was by looking out from the sides of the cab; that the tender in front, cut off the view. The evidence also tended to show that after the tender struck appellant the train could have been stopped in 20 or 30 feet, as it was not moving fast and up grade, and thereby have saved the appellant from the greater portion of his injuries. It appears that no person on the engine had noticed that appellant had been struck until a person from this restaurant, situated on the corner, ran out and attracted their attention and caused them to stop the train. The evidence unquestionably showed negligence on the part of those in charge of the engine in backing the train along the street when its passenger train was standing at the depot to receive passengers, without any one keeping a lookout in front; or the ringing of the bell or sounding the whistle, or in any manner giving notice to persons using the streets or crossing its track. The appellee virtually concedes this, but contends that appellant was guilty of such contributory neglect by failing to look to the west on its track, before attempting to cross it, as should prevent his

right of recovery.   In our opinion this question should
have been submitted to the jury.

In the case of the L. & N. Railroad Company v.
Potts, 92 Ky. 33, 13 Ky. L. R. 344; 17 S. W. 186, the
court after referring to the Shelby Case, 85 Ky. 224, 8
Ky. L. R. 928; 3 S. W. 157, and the Conly Case, 89 Ky.
402, 11 Ky. L. R. 602; 12 S. W. 764 said: "It is held in
those cases that neither a train nor a single car should
be permitted to move on a side track in a city or town
'without some servant is in position to give warning
of its approach, and to control its movements.'   It
is also held in said cases that to let a train or car
move in such place without a servant being in a posi-
tion to control and give warning of its approach, is
willful negligence.   The same rule should govern a
moving train or car on the main track. Here, as said,
the jury was authorized to believe from the appellee's
evidence that no servant was in position to control
said cars nor to give warning of their approach."
In the case of the Louisville & Nashville Railroad
Co. v. Schuster, 7 S. W. 874, 10 Ky. Law Rep. 65:
"The degree of care to be exercised by a railroad
company must necessarily depend upon the location
and the circumstances of the case.   At places not fre-
quented by the public, either by right or the permis-
sion, express or implied, of the company, and in lo-
calities where people are not constantly passing
about, and where they can not reasonably be expected
to be, those in charge of a train are not required by
law to be on the lookout for them.   In such cases the
company is entitled to exclusive use of its tracks, and
those upon it are trespassers; and those in charge of
a train are only required to avoid injury to them if
they can do so upon becoming aware of their peril.
In a place thickly populated, however, and where
many persons are known to be constantly passing
about and across the road, as in a city like Louisville,
the public interest and regard for the safety of human

life require a different rule. In such a case, those in charge of such a dangerous agency as a railroad train must be on the lookout for persons upon and crossing its track; and must, by the customary signals, warn them of the approaching danger. This rule should be rigidly enforced.'' The proof in this case shows that the place where appellant was injured was one where persons were constantly passing about and across the track, especially upon the time of the arrival and departure of passenger trains, and there was neither a lookout for persons upon the track, nor any signals given to warn them of the approach of danger.

In the case of Crowley v. L. & N. R. R. Co., 55 S. W. 435, 21 Ky. Law Rep. 1435, the court said: ''On the facts shown here the jury might well have found that appellee's servants in charge of the engine, if they had kept a proper lookout, might have seen this woman in time to warn her of the danger, or check the engine before it reached her, and that she was injured by reason of their neglect, while exercising such care for her own safety as may be ordinarily expected of the common run of people under the circumstances.'' Again, in the same case, the court said: ''Though it may be true that appellant should have seen the engine and got out of its way, the fact remains, that she did not see it, and that foot passengers not uncommonly make mistakes of this character, especially when there is another train passing to which their attention is directed. For the protection of human life against such mistakes of vision and the like, the law requires a lookout to be kept at public crossings in cities, and where no lookout is kept, and by reason of this a traveler upon the highway is injured, when by ordinary attention his peril might have been discovered and the injury averted, a recovery may be had. To hold otherwise would be to absolve the railroad company from all obligations to keep a lookout at such places.

While appellant was not crossing appellee's track at a place where a public highway crossed it, yet he was crossing at a place where those who patronize appellee had been constantly crossing for the purpose of taking passage upon its trains, and for its passengers to satisfy their hunger at the restaurants. Upon the facts proven in this case we do not feel authorized, as a matter of law, to say that the appellant was guilty of such contributory negligence as precludes a recovery on his part.

The judgment is reversed, and remanded for further proceedings consistent herewith.