## L. & N. R. R. Co. v. Trisler.

(Decided October 28, 1910.)

### Appeal from Fayette Circuit Court.

Railroads—Injury to Passenger—Amended Pleadings—Discretion of Trial Court in Admitting.—This is an appeal from a judgment for $3,000.00 recovered by appellee against the Louisville & Nashville Railroad Co. for injuries inflicted on appellee by the alleged negligence of the agents of appellant in charge of a passenger train upon entering the station yards at Lexington, Ky., and is affirmed on the evidence; the court holding that the action of the trial court in admitting the amended pleadings will not be disturbed, unless its action appears to be a plain abuse of discretion prejudicial to the substantial rights of the parties and not in the furtherance of justice.

SHELBY & SHELBY, BENJAMIN D. WARFIELD, CHAS. H. MOORMAN and WILLIAM A. NORTHCUTT for appellant.

ALLEN & DUNCAN and STOLL & BUSH for appellee.

Opinion of the Court by Judge Nunn—Affirming.

This is an appeal from a judgment for $3,000 recovered by appellee against appellant, L. & N. R. R. Co., for injuries inflicted by the alleged negligence of the agents of appellant in charge of a passenger train, upon entering the station yards in Lexington, Kentucky.

The action was instituted against appellant and the Lexington Union Station Company, which operates the station in the city of Lexington. After the evidence was introduced, the court sustained a motion for a peremptory instruction in behalf of the station company, and the judgment was rendered against appellant alone. There are four tracks at the station; number one is next to and

along side of the station; number two is a few feet from and parallel to number one, and between number two and three which is parallel to number two, there is a platform covered by an umbrella shed, and a few feet beyond track three and parallel thereto, is number four. All of these tracks come together near Limestone street, four or five hundred feet away, which crosses the railroad track at right angles. It appears that the Union Station Co. owned and exercised control over these tracks from Limestone street to what is known as "Ayer's alley," Limestone street being west and the alley east of the station. It appears that track number four was used by the C. & O. Ry. Co. for freight cars, and track number three for its passenger trains. Appellee was employed by C. & O. Ry. Co. as car inspector and it was his duty to be at the station when its passenger trains arrived and inspect them, and when not thus engaged at the station, it was his duty to be in the yards about one mile east of the station. Upon the occasion he received his injuries, he was at the station to meet the C. & O. passenger train number 23, coming from Washington, D. C., and bound for Louisville, Ky. It was due in Lexington at 5:10, p. m., and due to leave at 5:15. It was over an hour late on the day in question, but when it did arrive he inspected it and it left for Louisville, going west, at 6:28 p. m. Appellant's train, number 37, from Cincinnati, was due in Lexington at 6:35 p. m., and according to the proof, invariably, except in cases of emergencies, went into the station on track either number one or two. Between the departure of train number 23 at 6:28 and the arrival of train number 37 at 6:35, appellee went to a lunch stand at the corner of Limestone and Water streets, bought a sandwich and immediately left, crossing Limestone street going east following track number three for the purpose of going through the union station grounds to the freight yards of the C. & O. Ry. Co., where it was his duty to report. His course, according to his testimony and that of several other witnesses, was along the ties just outside of the south rail of track number three. He was eating his sandwich as he went along. When he reached a point about 130 feet from the switch near Limestone street, and within a few feet of the station platform, the pilot beam on engine number 37 struck and threw him violently to the ground and to one side, his head striking the north rail of track number four. The base of his skull was cracked, his shoulder and arm were bruised, he be-

came unconscious instantly and remained so for ten days or two weeks in the hospital. The blow injured his sight and hearing and also his mind to some extent. He had not recovered at the time of the trial, and the physicians who testified seem to be in doubt as to whether he ever would. Appellant makes no complaint of the amount of the recovery, therefore, we will not consider the extent of his injuries any further.

Appellant filed an answer controverting the affirmative matter of the petition and pleaded contributory negligence on the part of appellee. Appellant, in its original brief, presents three grounds for a reversal, and four additional grounds in a supplemental brief. It is claimed the court erred in permitting appellee at the conclusion of his evidence to file an amended petition, making a new issue, and that the court also erred in refusing to sustain its motion to discharge the jury and continue the case after permitting the pleading to be filed. Appellee described his injuries minutely in his original petition, and stated that he had been unable to labor at his calling, car inspecting. There was testimony introduced upon the trial without objections, showing that he had been unable to labor in any capacity since he received his injuries, and the amendment simply set forth this fact to conform the pleadings to the proof, and it was on account of the filing of this amendment that appellant asked that the jury be discharged and the case continued, which motion the court overruled. As stated, the original petition alleged in detail appellee's impaired sight, loss of hearing, defective memory, &c., which were of a character to affect a person's capacity to earn a living at any kind of employment, and these things were denied by the answer which formed an issue as to the extent of appellee's injuries and his ability to earn money at his calling, and we think it fair to presume that appellant used the same diligence in preparing for the trial of those issues as it would have used had appellee alleged in his original petition his loss of time and inability to earn money at any employment. The effect of the amendment was to change neither the cause of action nor the issues as to the specific injuries, but merely to broaden the allegations as to the result of his injuries. Appellant did not introduce any proof contradicting appellee's as to the character, extent and effect of his injuries. The trial court is vested with a

large discretion in permitting amended pleadings to be filed, and this court, in the cases of Taylor v. Arnold, 13 Ky. Law Rep. 576; Harris-Seller Banking Co. v. Bond, 20 Ky. Law Rep. 879, and I. C. R. R. Co. v. Jackson, 117 Ky. 900, held that the lower court's ruling in permitting or refusing amended pleadings to be filed, will not be disturbed, unless its action appears to be a plain abuse of discretion and prejudicial to the parties' substantial rights and not in the furtherance of justice. Appellant has failed to show that its substantial rights had been prejudiced.

Appellant complains that the trial court erred in permitting appellee to introduce incompetent testimony prejudicial to it. This complaint is founded upon the fact that appellee introduced himself and seven or eight other witnesses who testified that it was the invariable rule and custom for the L. & N. passenger trains coming from the west to run in on track number one. This testimony was introduced while the Union Station Company was a defendant, and was for the purpose of showing negligence on the part of that company in permitting the L. & N. passenger train number 37 to go in on track number three, and for the purpose of relieving appellee of the charge of contributory negligence in not discovering and avoiding the train which injured him. It was not introduced for the purpose, and it did not have the effect to show negligence on the part of those in control of train number 37. Appellee and several witnesses testified that in passing the switch near Limestone street, just after leaving the lunch stand, they saw that it was set to run train number 37 in on track number one, and that appellee walked along the ends of the ties on the outside of the south rail of track number three. Appellee stated that he felt secure there as there was no train due to run upon that track; that he did not walk between the tracks numbers three and four because some repair work was being done between the tracks and it was rough. This position of appellee was shown by all the witnesses who testified upon the subject, except the engineer in charge of the train that struck him. This testimony was competent in defense of the charge of contributory negligence on the part of appellee. The fireman on number 37 stated that he did not see appellee at any time before he was struck. The engineer was the only person on the train who did see him, and he testified that he first noticed him moving east in the yards when he, the wit-

ness, was near the old market house some distance west of Limestone street; that he kept his eyes constantly on him until he was struck; that appellee was walking between tracks three and four and in the clear; that when he reached a point seven or eight feet from him appellee suddenly turned to the left and stepped upon the south rail of track three; that when he discovered that appellee was going upon the track he shut off the steam, applied the air brakes and blew the alarm whistle. All the witnesses stated that the whistle was blown at the moment appellee was struck. Several of the witnesses introduced by appellee testified that there was no signal given of the approach of the train, and that the headlight was not burning. Appellee stated that he did not see the train approaching; that there was no light thrown about or around him, that he did not notice the train's approach and if he had heard the escape of steam from it, he would have believed that it was coming in on track one or two. He states that by reason of the blow his memory of things which occurred at that time, was rather hazy. Some of appellant's witnesses testify positively that the headlight on the engine was burning as the train entered the station. In view of the pleadings, we are of the opinion that the court committed no error in allowing the testimony referred to to be introduced.

The complaint of errors in the instruction given, is not well founded. It is true, the law might have been expressed in more explicit language, but they are such as have often been approved by this court. The jury could not have misunderstood them. The evidence is overwhelming to the effect that appellee had a right to believe that it was perfectly safe to walk upon the ends of the ties of track three, and when the engineer saw him upon the track, he knew it was the custom for his train to go in on track one and this was sufficient notice to him that appellee felt secure in walking upon track three, and his failure to give him warning of his danger, under the circumstances, was negligence. The engineer admits that he did not blow the whistle until about the time the engine struck appellee. It is true, he stated that appellee was walking between the tracks and in the clear, but he is overwhelmed in this by the other testimony in the case.

Appellant presents in its supplemental brief, with great force, what is known as "the last clear chance doctrine," and contends that if properly applied it would

preclude appellee's recovery in this case. Authorities from some of the other states upholding this doctrine are cited. It is enough to say, however, that this rule has never been applied in this state, and cannot be approved without overruling a number of decisions. See the cases of L. & N. R. R. Co. v. Potts, 92 Ky. 31; L. & N. R. R. Co. v. Schmetzer, 94 Ky. 424; L. & N. v. Lowe, 118 Ky. 260; Kentucky & Indiana Bridge Co. v. Snydor, 179 Ky. 18; Perkins v. C. & O. Ry. Co., 123 Ky. 229; I. C. R. R. Co. v. Mahan, 17 Ky. Law Rep. 1200; I. C. R. R. Co. v. Murphy, 123 Ky. 787, and L. & N. R. R. Co. v. Schuster, 10 Ky. Law Rep. 65. In the Murphy case, Murphy was walking along the tracks of the company at a place where a lookout duty existed. The company was negligent in running its train too rapidly and in failing to give proper signals after Murphy's presence was discovered, yet it is clear from the opinion that if he had looked he could have seen the train and saved himself, and, so far as the last chance doctrine is concerned, it is likely that Murphy had the last clear chance. If the position of counsel for appellant is sustained, then the negligence of Murphy would have been considered the proximate cause of his injury, unless it appears definitely that after he ceased to be able to save himself, the railroad company could have avoided injuring him by the use of ordinary care. The recent case of I. C. R. R. Co. v. Flaherty, 129 S. W. 558, is in point. Flaherty was walking on the track, could have easily stepped out of danger when the cars were within a few feet of him, had he seen them, and he had only to look behind him to discover their approach. Yet, it appears that no lookout was kept and that his danger could have been discovered by a proper lookout in time to warn him. He was allowed to recover. According to the doctrine urged by appellant's counsel, Flaherty would not have been allowed to recover, because his negligence continued to the last as an operating clause.

The matters presented for a reversal as to the incompetency of the juror Adams and the alleged improper remarks of counsel for appellee in his closing speech, are trivial and did not operate to appellant's prejudice in any respect. The verdict is small, and upon the whole case we believe appellant had a fair and impartial trial.

For these reasons, the judgment of the lower court is affirmed.