## L. & N. Railroad Co. v. Kimble's Admx.

(Decided November 25, 1910.)

Appeal from Jefferson Circuit Court.
(Common Pleas Branch, Second Division.)

1. Railroads—Killing Child at a Crossing—Insufficient Warning—Contributory Negligence.—The rule is that notwithstanding the statute requires the use of a whistle and bell at crossings, if the conditions are exceptionally dangerous other and additional means must be used. It is not true that if an engineer at a dangerous crossing gives ever so much warning he may then go on and kill people who do not take heed. At a station so near a city as that it is practically a part of the city if the use of the whist'e or bell are not sufficient to give notice of the approach of a train thereto then it is the duty of the railroad company and those operating its trains to use such other means to prevent injury to persons using it, as in the exercise of a reasonable judgment might be deemed necessary. In this case where a girl nine years old was killed by a train at a crossing, whether the killing was negligent was a question of fact for the jury. If a child of that age does not know or by reason of its age could not be expected to know the danger in crossing the track then it ought not to be charged with negligence. In such a case the question of contributory negligence was properly for the jury.

2. Life Expectancy—Power to Earn Money—Excessive Verdict—Question For Jury.—A girl 9 years old has an expectancy of living 39 years longer. Her expectancy is her's, not her father's,

though her services belong to him until she is 21 years of age. A jury does not award compensation for her labor. It is the destruction of her power to earn money, a power which is her's alone. We cannot say that a verdict of $6,000 was too great a value or even enough. Certain it is that it does not strike us as being so excessive as to indicate passion or prejudice on the part of the jury or excessive at all.

HELM & HELM, BENJAMIN D. WARFIELD and CHAS. H. MOORMAN, for Appellant.

EDWARDS, OGDEN & PEAK, W. O. BRADLEY and J. M. CHILTON, for Appellee.

. OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

St. Matthews is a suburb of Louisville. Several turnpike roads, lanes, and other highroads, as well as the tracks of the Louisville & Nashville R. R. traverse it. It is thickly populated, though not so dense as a city, but much more so than a rural settlement. Its dimensions, population and traffic are more than a hamlet's. One of its roads is called Chenowith Lane. It crosses the railroad at the station. At that point there are four railroad tracks, two main tracks and two side tracks. The two latter just at the crossing have turnouts or switches connecting with the two main tracks. Approaching the railroad from the north, Chenowith Lane passes between buildings and fences. There is a curve in the railroad track, beginning several hundred feet west of the crossing which, owing to a cut in the right of way, the fences, trees and houses adjacent thereto and along the right of way, obstruct the view of the track in that direction from four to five hundred feet, or perhaps less, until one gets on to the track. On July 28, 1908, Mabel M. Kimble, a nine-year-old child, was going from home, which was some distance from this crossing, to pay a visit to a relative living south of the crossing. She, in company with two other little girls, came down to the crossing, where the latter turned back, and she went on. As she got midway of the tracks, which occupy about forty feet in width, she became aware that a train was approaching rapidly from the west. Glancing hastily about, she ran and attempted to cross ahead of the coming train. The train was running about fifty miles an hour. It struck her and hurled her for some distance against a telegraph pole. She was crushed to death.

In this suit against the railroad company to recover damages for the destruction of her life, it is charged that the company negligently failed to give statutory warnings for the crossing, and that the crossing was exceptionally dangerous on account of its situation and the great numbers of persons using it, and that the company negligently failed to give other suitable warnings of the approach of its trains, knowing of the condition, dangers and travel.

Negligence was denied; contributory negligence was pleaded.

The verdict was for the plaintiff. The amount is $6,000.

The principal error assigned for reversal is, that the intestate was shown to have been guilty of such contributory negligence that the court should have peremptorily instructed the jury to render a verdict for the defendant.

We are persuaded from the evidence that the statutory signals for crossings were given. Also, that the engineer blew the whistle for the station. Also, that the automatic electric alarm bell at the crossing was working. We are likewise impressed that the child did not hear the whistle. or the engine bell, and that if she heard the electric crossing bell she did not know what it meant. She was walking along quietly, and showed no indication of fright. nervousness or haste. She was old enough to have known the danger from the train had she been aware of its approach. Upward of fifty witnesses testified in this case. Nearly all of them testified upon the subject whether the whistle was blown, whether the engine bell was ringing, or whether the crossing bell was working. Some few, but very few, heard all three of the instruments. About half the number heard some one or two of them. Perhaps half, with equal opportunities for hearing, did not hear any of them. Of the latter, this fact may in part be accounted for because of the frequency of such noises, they failed to notice them. But many of these witnesses were so situated, and there were such reasons for attracting their attention to the subject, that their failure to hear cannot be explained wholly on the ground stated.

The railroad company had placed an electric alarm bell at the crossing, which was set in motion automatically whenever a train came within a certain distance. Such bells are not placed at all crossings. When they are

used, it is because it is believed the dangers are more, and the travel greater, at those places than at ordinary rural crossings. It is a taking notice of the fact that the ordinary means of warning are not adequate for the particular crossing. Not adequate, not because ordinarily a locomotive whistle or bell are not understood by travelers, but because it is a known fact that where the traffic is so constant, or the tracks numerous where a great number of trains are passing, such warnings, unless the engine is in sight, do not in fact convey the intelligence that it is about to use that particular crossing. Hence the necessity for employing some other means of notifying pedestrians and others who have occasion to use the crossing, of the approach of the train so that they may keep out of its way. Nor is this necessity created alone by the presence of children, or aged persons. It is due to the known fact that adults also, even of experience, fail to take mental note of an incident of such frequent recurrence to be almost constant. Its very monotony retracts from its obviousness.

The reason bells and whistles are used is because ordinarily they have been found sufficient to give adequate warning. If it had not been so, they would not be so employed. When, however, conditions are such that those means are not adequate, the same reasoning requires the adoption of some other that is adequate. For the object is to give warning. Therefore, the rule is that notwithstanding the statute requires the use of whistle and bell at crossings, if the conditions are exceptionally dangerous, other and additional means must be used. It is not true that if the engineer gives ever so much warning he may then go on and kill people who do not take heed. The presumption is, that the instinct of self-preservation can be relied on to impel people in danger to extricate themselves when made aware of the fact. But in every state of case they should first be made aware of the fact before the presumption can be indulged. And it is on this presumption alone that railroad trains run with such speed across highways, along streets, and through more or less populous communities. In cities, speed is reduced, gates are placed at crossings; so are watchmen; the engine bell is ringing continuously; so is the electric bell in addition at some crossings. All these additional precautions are taken and required solely because the opportunities for casualties are multiplied in populous centers in proportion to the numbers using the

crossing, and because of the confusion from noises, obstruction of view and other things there that peculiarly distract the attention of the wayfarer. These additional precautions are not out of deference to any exceptional right of the urban population. And when they are required by law, it is not because the law regards the safety of that class of greater concern than the safety of any other. Therefore, when the conditions elsewhere approximate those just named, the law requires like precautions for the safety of life and limb.

Recurring to the conditions shown in this case, they are not materially different from those in the city. In truth, this is a part of the city, grown over its boundary, not made so dense in population and traffic as some other parts, but equally so doubtless with still others. After all, it is a situation more than an ordinary rural community where population is sparse, and travel consequently infrequent. Furthermore, the physical conditions are unusual in this; that being practically in a city, yet because of obstructions, the cut and the curve in the track, observation by sight is restricted, and sounds more or less so. The evidence in this case shows it to be so, not only the evidence describing the situation, but the evidence of how it operates in effect upon the community of whom the decedent was one. In its working, it actually failed to apprize one-half of those who were in a position to hear. Clearly, a system that gives notice to only a half will not do. Therefore, it was the duty of the court to have told the jury, and he did tell the jury, that if the use of the whistle and bell were not sufficient to give reasonable notice of the approach of trains to the traveling public at the crossing, and it was known or by the exercise of ordinary care could have been known to the defendant that this was so, then it was the further duty of the company, and those operating its trains, to use such other means to prevent injury to travelers at that crossing as in the exercise of reasonable judgment by ordinary prudent persons operating the railroad might be deemed necessary. The jury must have found, and we cannot say that they were not warranted in finding, that the crossing in question was exceptionally dangerous and that the whistle and bells were not reasonably sufficient to warn and protect the traveling public in the use of the crossing. Such being the case, when the child came upon the crossing she was unaware, because of defendant's negligence as stated, of the ap-

proach of the train. When she was made aware of the fact she was put in sudden peril, and in the panic caused by it she acted on the impulse to fly from the danger. That she chose the wrong course will not excuse the company for having put her to the cruel, sudden election. (Maysville & B. S. R. R. Co. v. McCabe's Admr., 100 S. W. 219; L. & N. R. R. Co. v. Taylor's Admr., 104 S. W. 777.)

Whether an act is negligent is sometimes a matter of law, sometimes a question of fact. Whether in this case the decedent acted negligently, that is, without the care, circumspection or caution of those of her age and experience, was a question of fact for the jury. Children are not held in law to the same degree of care as adults. To be negligent one must either do something which he knows or should know he ought not to do, or fail to do something which he knows or should know he ought to do. If a child does not know, or by reason of its age and inexperience should not be expected to know, then it ought not to be charged with negligence. A contrary rule would be inhuman. If appellant, a concern operated by experienced men of seasoned judgment, fails in the observance of a known duty, it will not lie in the mouth of its representative to say that it should be excused because appellee's intestate failed in what would have been a duty had she known it.

The question of contributory negligence in this case was properly for the jury.

It is claimed that the verdict was excessive, that the earning capacity of a girl nine years old is not so susceptible of proof that its value after she might become 21 can be measured, which is to say that for negligently killing female children there is only a nominal liability. A girl nine years old has an expectation of living 39 years longer. Her expectancy is hers, not her father's, though her services until she is twenty-one may belong to him. But the jury do not award compensation for her labor. It is for the destruction of her power to earn money, a power which is hers alone, and while it may be difficult to prove, is nevertheless of certain and substantial value. We cannot say, (and who could?) that $6,000 was too great a value, or even enough. Certain it is, it does not strike us as being so excessive as to indicate passion or prejudice on the part of the jury, or excessive at all.

Judgment affirmed.