## Louisville & Nashville Railroad Company, and Pittsburg, Cincinnati, Chicago & St. Louis Railway Company v. Benke's Administratrix.

(Decided May 21, 1915.)

Appeal from Campbell Circuit Court.

1. Negligence—Proximate Cause—Damages.—One, who claims damages because of injuries which he alleges that he received, because of the negligence of another, must prove some negligent act in the other, which was the proximate cause of the injury.

2. Negligence—Damages.—Where one seeks damages because of injuries incurred because of the negligence of another, and negligence may from the proof be imputed to such other, yet, if the one complaining was, also, negligent, and his negligence so contributed to his injury, that but for his own negligence, the negligence of the other would have been harmless, he can not recover.

3. Railroads—Crossings—Stop, Look and Listen.—While one proposing to cross a railroad track at a street crossing, is not required to stop, look, and listen for the approach of a train, yet he must not refuse to use his faculties of sight and hearing, and is required to use all reasonable precautions for his own safety.

4. Railroads—Negligence—Question for Jury.—Where one is injured by a train upon a railroad track, at a street crossing, and it appears that proper signals of the approach of the train were not given, or an effective lookout not maintained, or the train was operated at a dangerous rate of speed, it is a question for the jury as to whether or not the injured one was guilty of contributory negligence.

JAMES C. WRIGHT and BENJAMIN D. WARFIELD for appellant, Louisville & Nashville Railroad Company.

MAXWELL & RAMSEY and MATT HEROLD for appellant, Pittsburg, Cincinnati, Chicago & St. Louis Railway Company.

L. J. CRAWFORD and H. GUNKEL, JR., for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

On the 17th day of October, 1913, Elizabeth Benke unfortunately lost her life upon the crossing of the Louisville & Nashville Railroad at Eighth and Saratoga streets, in the city of Newport. She was struck by a moving train and killed. Her administratrix filed this suit in the Campbell Circuit Court against the Louisville & Nashville Railroad Company, and the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, alleging that her death was caused by the concurrent gross negligence of the respective agents and servants of each of these railroad companies, who were operating a train over the tracks of the Louisville & Nashville Railroad Company at that point; that they negligently ran the train against decedent at that point, instantly killing her, and that their negligence in so doing was the proximate cause of her death, and sought a judgment against each of the companies for the damages caused the estate of the decedent by her death. The petition further alleged that the road at that point belonged to the Louisville & Nashville Railroad Company, and that they owned and operated a line of steam railroad over the road, and had at that time full power to own and operate such railroad, and that the train which ran over and killed the decedent was operated by the servants of both of the railroad companies.

The Louisville & Nashville Railroad Company, by its answer, denied that it, either alone or with its co-defendant, or by any agent or servant of it, operated or ran the train of cars complained of, or that at the place it was guilty of any negligent act. It furthermore plead as a defense that the decedent, in being upon the railroad track, was guilty of negligence, and was not in the exercise of ordinary care, and that such negligence and want of care upon her part so contributed to the accident by which she was hurt, as that, but for it, the accident would not have happened, and she would not have been killed or injured.

The Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, by its answer, denied that the train of cars complained of was operated or run by both companies, or by their respective agents or servants; and denied that any concurring negligence of the companies, or their servants, was the proximate cause of the death of decedent, and, also, denied that it operated the loco-

motive and train of cars, and denied that it was guilty of any negligence alone or concurrently with its co-defendant, or that there was any negligence about the operation of the train, or that any such negligence was' the proximate cause of decedent's death, or that it in anywise caused the decedent's death, and as a further defense plead that the decedent was negligent, and that her contributory negligence was the proximate cause of her death. The affirmative allegations of these answers were denied by the appellee by reply.

The trial before the court and a jury resulted in a verdict of the jury and a judgment of the court in favor of the appellee against each of the appellants, and they having filed grounds for a new trial, which were overruled, they each appeal to this court.

The first ground relied upon was alleged error upon the part of the court in overruling the motion of appellants for a direct verdict in their favor, at the close of the appellee's evidence. A proper exception was taken by the appellants to the ruling of the court complained of by them.

The proof introduced by appellee showed that the decedent was a lady forty-two years of age, in good health, and in possession of all of her faculties of sight and hearing, and that she had for many years been a resident upon Saratoga street, between Eighth and Ninth streets, in Newport, and had resided in a house, and was so residing, at the time of her death, which is on the east side of Saratoga street, and the second door from the Eighth street crossing, and between Eighth and Ninth streets. Saratoga street is sixty-six feet in width and forty feet between the curb stones on each side, the sidewalks being thirteen feet in width. The tracks of the Louisville & Nashville Railroad Company are laid near the middle of this street, which runs north and south. From the edge of the sidewalk on the east side, in front of the house of decedent, it is seventeen feet and four inches to the rail of the railroad track on the east side. It is about the same distance from the west rail of the railroad track to the sidewalk upon the west side. The railroad track is four feet and nine inches in width. Eighth street, including the sidewalk, is fifty feet in width, and runs east and west. From Tenth street to Ninth street it is a descending grade of one foot and nine inches in the one hundred feet, and

from Ninth street to Eighth street there is an ascending grade of six inches in the one hundred feet, and this ascending grade continues about one hundred feet north of Eighth street, when the grade descends from there to the Ohio River. It is five hundred and eighty-eight feet from the center of Eighth street to the center of Ninth street, and 538 feet between the two streets. On the morning upon which decedent lost her life a freight train consisting of a yard engine and fifteen freight cars, loaded with vegetables and possibly with some livestock, was proceeding from Latonia to Cincinnati, over the line of this railroad into Cincinnati. The train was about eight hundred feet in length, and was being operated by a crew in the employ of the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, and associated with them was a pilot, who was in the employ of the Louisville & Nashville Railroad Company. The train belonged to the Pittsburg Company. At approximately seven o'clock, A. M., this train arrived at Eighth street, going northward to Cincinnati. It was running, as variously estimated by the witnesses, from four to eight miles per hour. The bell was being continuously rung, at least it had been ringing continuously from the time it came within hearing of Eighth street up to the time of the accident. There were four persons in the cab of the engine, the engineer, fireman, conductor, and the pilot. The conductor and fireman were on the west side of the cab, and the conductor keeping a lookout at the window directly in front, upon that side. The fireman was sitting in his rear. On account of the engine the conductor and fireman could not see upon the east side of the train, in front of it. The engineer and pilot were upon the east side of the cab, with the engineer looking out of the window immediately in front of him, along the track, while the pilot sat in his rear, looking out at the side window. The appellee offered only three witnesses, who were eye-witnesses of the occurrence which resulted in decedent's death, one of whom was a young lady, Miss Lampe, and the other two were the conductor and engineer, who were in charge of the train. Miss Lampe, in substance, stated that she was proceeding from Washington avenue, which is east of Saratoga street, along the north side of Eighth street, in the direction of Saratoga street, and when she arrived at Eighth street she heard the ringing of the bell upon the train and the roar

of the train, and that she hurried westward to Saratoga street, in order to cross it before the train arrived, so that she would not be compelled to wait until it passed by. When she arrived at the northeast corner of Saratoga and Eighth streets, the front of the train was then about one hundred and thirty feet—or one-fourth of the distance between Eighth and Ninth streets—south of the south crossing of Eighth street over Saratoga street. She hurriedly crossed the north crossing of Eighth street over Saratoga street. In crossing, when she had arrived at the track of the railroad, she looked south toward the train and saw the decedent step off from the curb, in front of her door, into the street, and came walking hurriedly toward the crossing on the south side of Eighth street, carrying a pocket-book in one hand and an umbrella in the other, and walking diagonally toward the point where the railroad track reaches the crossing on the south side of Eighth street. Miss Lampe passed on to the northwest corner of Saratoga and Eighth streets, and when she had nearly reached the curbing, she looked again, and saw decedent stepping onto the rail on the east side of the track. The engine was now very close to decedent. When the witness got onto the sidewalk she looked again, and just before decedent reached the west side of the track, the engine struck her, and carried her just over the crossing on the north side of Eighth street, which is a distance of fifty feet, where she fell from the board in front of the engine, and the wheels passed over her. Miss Lampe had not quite reached the curb on the northwest corner of Eighth and Saratoga streets, when she saw the decedent step on to the eastern rail of the railroad track, a few feet south of the crossing on the south side of Eighth street, and when Miss Lampe had gotten upon, the sidewalk, she saw the engine strike the decedent. There was nothing to keep decedent from seeing the train, and from hearing the ringing of the bell and the roar of the train, as Miss Lampe states that she heard the roar of the train before she arrived on Eighth street, a square distant from Saratoga street. The engine upon the train stopped one hundred and fifteen feet north of Eighth street, which would have put the rear of the train about one hundred feet south of Ninth street.

The conductor stated, in substance, that the train was proceeding at not exceeding seven miles per hour;

that in going north to Eighth street for some distance the road was upon descending grade, and that a considerable part of the train was still upon this descending grade when the engine arrived at the south crossing of Eighth street; that the engineer had applied and was using the "service" air to control the movement of the train, and that as it approached Eighth street the conductor was standing looking out the front window of the cab, and as he remembered it, had one hand upon the appliance controlling the use of the air brakes and the other a hold of the injector, which is an appliance used to inject water into the boiler. · The conductor, himself, was sitting in front of the fireman, on the west side of the cab, and he was looking out the front window, on that side, and about that time had readjusted some little cans which were about to fall off a board in the cab. He and the fireman, on account of their position, could not see out upon the east side of the engine—that is, any object near to it. He did not see the decedent, but just as the train approached the crossing over Eighth street, upon the south side, the pilot, who was sitting in the rear of the engineer, on the east side of the cab, cried out something which he did not understand, when the engineer said to the fireman and conductor: "Did that woman get by?" and immediately applied the emergency brakes, and stopped the train as quickly as it could be done.

The engineer testified, in substance, upon his introduction by appellee, that the train was moving from four to six miles per hour; that he had it under perfect control and was keeping a lookout at the front window along the track of the railroad; that he was using a sufficiency of air to regulate the movement of the train; that the matter of adjusting the injector was only a matter of from one to ten seconds; that he at all times was keeping a lookout in front for any persons who might be upon the track, and could see anyone who was upon the track, or very near to it, and that he did not see the decedent until she was within eight or nine feet of the railroad track, and five or six feet in front of the engine; that she was moving rapidly, and as he expressed it, ran across the track in front, and that upon discovering her purpose to cross, he immediately applied the "emergency" air brakes with all of its power, and opened the sand box, and stopped the train as quickly

as he could, which was within a distance of eighty or ninety feet. The engine and all of the fifteen cars of the train were equipped with automatic air brakes, which were in perfect working order; that when he applied the air brakes he put on the full quantity of pounds instantly, and that they applied as quickly as the conditions of the rails would permit, it being a damp morning; that he was not using any steam at the time, because the train had been coming down grade, and part of it was still on a descending grade; that the decedent was about five or six feet in front of the engine when she started across the track.

Foy, who had been an engineer, testified as an expert, that the train, by the use of "emergency air" and using the sand, could be stopped in about ten feet, when going at the rate of seven or eight miles an hour, and at ten miles an hour, twelve or fourteen feet, and from four to seven miles an hour, from six to eight feet, with good brakes, keyed up, and all the triple valves working throughout the entire train.

Charles R. Johns, who was chauffeur of the police automobile in Newport, testified that he received a call somewhere in the neighborhood of seven o'clock to go to the scene of the tragedy, and that he went up Monmouth Street to Eighth and over Eighth to Saratoga, and arrived there in two or three minutes after he received the call; that the train was standing still, and the decedent's body was under the engine, and the engineer was standing along side of the engine, and he asked him how this thing happened, and the engineer said: "Honest, I don't know. I didn't see her," and the fireman, in a conversation with others, said: "If that woman did not get by, we got her." This evidence was objected to and the objection overruled and exception taken.

One Munninghoff, introduced by the appellee, did not see the tragedy, but testified that the train stopped nearly all at once, but moved about one hundred feet after it began to slow up. This was the substance of all of the evidence introduced by the appellee in chief.

The engineer being recalled by the appellants, testified, that when he first saw the decedent and discovered she was intending to cross the track in front of the engine, that he did all he had time in which to do, in order to avert injury to her; that he did not sound the whistle nor do any other thing more than he did, because he

did not have time, until it was too late to do anything of that kind, with any purpose of averting the injury. The engineer further stated that he saw a lady pass along Eighth street just before he arrived at the street.

The pilot testified that he was sitting in the rear of the engineer, and the engineer was keeping a lookout at the front window of the cab, and that he was looking out at the window on the east side of the cab as they approached Eighth street; that the train was running four or five miles an hour; that he saw the decedent when she stepped off the sidewalk into the street, and as he thought, was going to walk down to the crossing; that she continued to walk along in that way until about the time the train arrived at the crossing, on the south side of Eighth street, when she struck a little trot, and started across in front of the engine, and as soon as he discovered her purpose, he cried out to her, when the engineer, who was looking out at the front window, looked out of the window on the east side, and then at the front again, but immediately applied the emergency brakes, and opened the sand box. She stepped off the curb into the street about forty or fifty feet south of Eighth street, and about fifty or sixty feet of the engine, and walked diagonally from where she stepped into the street toward the northwest corner of Eighth and Saratoga streets, and was about ten feet from the rail when he first realized that she was going to try to cross the track, and was about ten feet from the engine when she increased her gait, and he realized that her purpose was to cross the track in front of the engine. The engineer at that time was looking out of the window in front of him, and immediately applied the emergency air brakes. Witness then asked the fireman if the lady got across, but the fireman had not seen her, and by that time witness was getting off the cab, and got down in the deck of the engine, and looked and she was right under the engine, on the fireboard side. There was nothing in the evidence for appellants, which added to the evidence for appellee, tended to support her cause of action.

The appellee's claim for damages is based upon the alleged negligence of those operating the train. In L. & N. R. R. Co. v. Kimble's Admrx., 140 Ky., 759, negligence was defined as follows: ''To be negligent, one must either do something which he knows or should

know, that he ought not to do, or fail to do something which he knows or should know that he ought to do." To entitle anyone to recover damages for injuries or death caused by coming in collision with a railroad train, as in any other kind of case, it is necessary to show by the evidence that those operating the railroad train were in some way negligent. It has been often held that it is the duty of those operating a railroad train through a city or along the streets of a city, where people have a right to go and travel, to anticipate the presence of persons upon the track, and they must give timely notice of the approach of the train, and must moderate its speed so as to have the train under control, and to keep an effective lookout. They must moderate the speed of the train so as to have it under control, and so that, if it is necessary in order to avert injury to persons, to be able to stop the train within a reasonable distance, considering the safety of those upon the train. They must give timely notice of the approach of the train by signals, whistle, or ringing the bell, so as to notify persons who might be upon the tracks or attempting to cross the tracks of the train's approach. The lookout must be kept so as to give warning, and to stop the train or lessen its speed if it is necessary to save persons upon the track from injury. In this case the undisputed evidence shows that those operating the train were causing it to move along at a very moderate rate of speed; that they gave warning of its approach by continuously sounding the bell, and the engineer was keeping a steady lookout at the window upon his side of the train, and the conductor was keeping a lookout on the other side. The train was reasonably under control, and at the time of the injury to decedent, the engineer had his hand upon the appliance which operated the air brakes, as he approached the crossing where the injury occurred. It does not appear that these operatives failed in any respect to exercise ordinary care in the operation of the train, and to prevent injury to any persons who might be upon the track or crossing it.

In L. H. & St. Louis Ry Co. v. Jolly's Admrx., 90 S. W., 977, it was said:

"The law does not look to bare possibilities. It requires no more of the human machine than may be reasonably expected of it under the circumstances."

If, however, for some reason or another, some degree of negligence could be imputed to the ones operating the train, the appellee would not be entitled to recover damages on account of the death of decedent, if the decedent was, herself, guilty of negligence, which contributed to her injury, and, but for which, she would not have been injured. It was incumbent upon the decedent to use ordinary care for her own safety, and if she failed to do this, and her failure to use such care resulted in her death, while it was lamentable and unfortunate, it could not be attributed to any other cause.

At crossings in a city the law in this State does not require an individual, before crossing the railroad track, to stop, to look or to listen. L. & N. R. R. Co. v. Miller, 134 Ky., 716; C. & O. Ry. Co. v. Patrick, 135 Ky., 506.

In Central Railway Co. v. Smith, etc., 93 Ky., 457, it was said:

"This rule does not dispense with the duty on the part of one crossing, or using the street, to use ordinary care and prudence for his own safety, and if he fails to do this, and is guilty of gross neglect, as well as the party injuring him, and but for which the accident would not have happened, he cannot recover."

In commenting, however, upon the above rule, ·the court said:

"We do not mean to be understood as holding that one in crossing or going upon a railroad track, where he is entitled to go or be, should neglect the use of his faculties, or fail to exercise any reasonable precaution, that would enable a person of ordinary prudence, under the circumstances, to discover the approach or presence of a moving train, and thereby prevent injury to his person."

In Southern Ry. Co. v. Sanders, 145 Ky., 679, it was held that where a person who is injured, goes upon the track so close to an approaching engine, that injury to him could not have been averted by those in charge of the train, if a reasonable lookout had have been observed, he cannot recover.

In the case at bar, the uncontradicted evidence shows that the decedent was forty-two years of age; had resided upon the street all of her life, and was acquainted witn the coming and going of the trains, and had the perfect use of her faculties. It was seven o'clock, A. M., and there were no persons in the street or about

the crossing, except Miss Lampe. There was nothing to distract her attention from the observation of the train. As stated above, the bell was ringing, and the roaring noise made by the train could be heard at least a square. She came out upon the street, when the train was approaching, not further away than eighty or one hundred feet to her left, and proceeded to walk in the direction of the point where the railroad track approaches Eighth street, and within eight or nine feet of the railroad track, and as Miss Lampe and the engineer both testify when she attempted to cross the track, the engine was almost upon her, and the engineer says that she undertook to run across the track, in front of the engine, and Miss Lampe, in describing her actions, says that she went in a hurry, as though undertaking to get by something, or else had a habit of walking very fast. Considering this evidence, it is impossible to come to any other conclusion, except that she saw the train and its approach to her, but being in a hurry, doubtless, took the chance of crossing the track when the train was too near, and mistook her ability to get over before the train struck her. We fail to find in the record any evidence which would support the conclusion, that she was not fully aware of the presence and approach of the train. It is true that this court has uniformly held, that in places like a street crossing, it is a question for the jury, whether the person injured, in crossing or being upon the railroad track, exercised ordinary care in preserving himself from harm, but those cases were such, where the train was being run at a dangerous speed, or there was a failure to give timely warning of its approach, or a failure to maintain a proper lookout. L. & N. R. R. Co. v. McNary's Admrx., 128 Ky., 408; Perkins v. C. & O. Ry. Co., 123 Ky., 229, 94 S. W., 636; L. & N. R. R. Co. v. Lowe, 118 Ky., 260, 80 S. W., 768; L. & N. R. R. Co. v. Lucas, 98 S. W., 308; Central Ry. Co. v. Smith, 93 Ky., 449.

It has furthermore been held that it was a question for the jury, whether one crossing a railroad track at a place in constant use by the public, used ordinary care for his safety, to learn of the approach of the train, and keep out of its way, and where the determination of that question depended on a number of circumstances, on which persons may reasonably differ. C. & O. Ry. Co. v. Patrick, 135 Ky., 506; L. & N. R. R. Co. v. Miller, *supra*.

In this case, however, the train was not being run at a dangerous speed, a timely warning was given of its approach, and proper lookout maintained. The facts are such that reasonable minds may not differ in regard to them. It is, however, insisted, either that the engineer was not keeping a lookout and failed to see decedent, or else that he failed to use ordinary care to prevent injury to her after he saw her. The uncontradicted evidence of himself and the conductor was, that he was maintaining a proper lookout. If he should, however, have seen the decedent when she first came into the street, and proceeded to walk along between the sidewalk and the railroad track, he would have had the right to presume that she was not intending to get on to the track, and to rely upon her own consciousness of danger to prevent her from so doing, as she was a person of mature years. L. & N. R. R. Co. v. Hunt's Admrx., 142 Ky., 778; Murray v. Southern Ry. Co., 140 Ky., 453.

The train was giving the usual and customary signals of its presence and approach, and the engineer could not be expected to stop the train for the reason that some person was in close proximity to the track, but it became his duty, when he saw that she was intending to cross the track, to use such reasonably safe means as were at hand, to prevent injuring her. This he and the conductor stated that he did, and there is no contradiction of it. Whether he saw her or not, as appellee insists that he did not, her attempt to cross the track so close to the engine necessarily resulted fatally to her, and it does not appear that anything was left undone which could have been done to save her from injury, after those operating the train realized that she purposed to cross the track in front of the engine.

The evidence of the expert engineer, Foy, to the effect that the train could have been stopped within six to twelve feet, does not contradict the evidence to the effect that it was stopped as quickly as it could have been done, because the question propounded to him and the one answered by him was, that it could have been stopped within the distance mentioned by him, but that was regardless of the safety of the train. The conductor owed a duty to those with him upon the train, as well as a duty to the decedent, and could only be held culpable, if he failed to use ordinary care in the exercise of all reasonable means at his command, consistent with the

safety of the train, to avoid injuring the decedent, after he discovered her purpose to cross the track. C. & O. Ry. Co. v. Montjoy's Admrx., 148 Ky., 279.

If the train had been stopped within the distance prescribed by the expert, it does not appear probable that the result would have been different.

So we conclude that there was a failure of evidence to show that those operating the train failed to use ordinary care for the safety of the decedent, and a conclusive showing by the evidence that her death was caused by her own failure to exercise ordinary care for her own safety, and the court was in error when it overruled the motions of the appellants for a direct verdict by the jury.

Having arrived at this conclusion, it is unnecessary to discuss the other questions raised in the bill of exceptions.

The judgment appealed from is, therefore, reversed, and this cause remanded with directions to proceed in conformity to this opinion.