## Chicago, St. Louis & New Orleans Railroad Company, et al. v. Armstrong's Administrator.

(Decided January 26, 1916.)

### Appeal from McCracken Circuit Court.

1.  Trial—Peremptory Instruction.—A peremptory instruction is not authorized unless, after admitting the testimony offered by the claimant, and every reasonable deduction from it to be true, his cause of action yet fails of having any support.
2.  Trial—Peremptory Instruction.—Whenever evidence is offered in support of a cause of action, and it is the province of the jury to determine the weight to be given it, a peremptory instruction should not be given for the defendant.
3.  Railroads—Trespassers—Lookout.—Whenever, by the exercise of ordinary care by the employes of railroads, the presence of persons upon the railroad tracks must be anticipated, it is the duty of the railroad company to keep an effective lookout, maintain a reasonable rate of speed, and have some person in a place where he can control the movement of the train.
4.  Trial—Motion for Directed Verdict.—Where a motion for a direct verdict is made at the conclusion of all the evidence, the plaintiff is entitled to the benefit of any facts which were developed by the defendant's evidence, as well as those which appear from his own evidence.

5. Railroads—Trespassers—Lookout.—At places where the presence of persons upon the railroad tracks must be anticipated, and the train is operated at a dangerous rate of speed, or a proper lookout is not maintained, or timely warning of its approach is not given, whether the injured person was exercising ordinary care for his own safety, at the time of his injury, is a question for the jury.

WHEELER & HUGHES and TRABUE, DOOLAN & COX for appellants.

HENDRICK & NICHOLS and HAL S. CORBETT for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

M. W. Armstrong was struck and killed by a train of the Illinois Central Railroad Company, which was being operated upon a railroad which was owned by the Chicago, St. Louis and New Orleans Railroad Company, and which had been leased to the former company by the latter. The loss of decedent's life occurred at the crossing of a street or road near the corporate limits of the city of Paducah, which is called "Husband's Crossing." This action was instituted by the administrator of the decedent against both of the railroad companies to recover from them the alleged damages, which his estate had incurred by reason of the death. The alleged facts which were relied upon for the recovery were, that the crossing was a public one, in or near the corporate limits of the city of Paducah, in a thickly settled and populous community, and was used by a great number of persons, at both day and night, upon foot and in vehicles, going from and to the city of Paducah, and other places, and that this fact was well known to appellants and their agents and servants; that decedent was passing over the crossing, when a passenger train, which was being operated at a very high, unusual and dangerous rate of speed, approached the crossing and ran upon it at the same rate of speed, without giving any warning of its approach by ringing the bell, sounding the whistle or in any other way; and that the view of decedent and the traveling public, in approaching the crossing, was so obstructed by trees and undergrowth, that it was impossible for him to see a train coming from the direction in which the train came, which struck him, until he was upon the track of the railroad or very near to it; that the crossing was exceptionally dangerous and persons

were to be anticipated thereon, but the appellants, without giving any warning of its approach, ran the train at a high and dangerous rate of speed upon the crossing and struck and killed the decedent, and which acts were alleged to have resulted from the gross carelessness and negligence of the appellants and their agents.

The appellants, answering, denied all the averments of negligence upon their part or upon the part of their servants, and while admitting the death of decedent from being struck by one of their trains at the crossing, alleged that the decedent, with knowledge of the approach of the train, negligently drove upon the track, so near to the approach of the train, that it was impossible for the train to be stopped in time to prevent the collision with the buggy in which decedent was riding, and that the collision and his death arose from decedent's own negligence, and but for his own negligence in driving upon the track, with full knowledge of the approaching train, and so near to it, that it could not be stopped in time to prevent a collision, his death would not have occurred.

The averments of contributory negligence were denied. A trial resulted in a verdict of the jury and a judgment of the court in favor of appellee against appellants for the sum of $1,000.00 in damages.

A new trial being denied in the court below, the appellants ask for a reversal of the judgment upon the sole ground that the court erred in overruling their motion for a direct verdict at the conclusion of the evidence for the appellee, and again at the conclusion of all the evidence.

The appellants insist that the evidence shows without contradiction that there was no negligence upon the part of appellants, or their servants, and that the proof of the contributory negligence of decedent is without contradiction.

The motion for a direct verdict at the conclusion of the evidence for appellee will be first considered. It has oftentimes been held by this court, that where the evidence, to any extent, conduces to establish the cause of action of one suing, a motion to direct the jury peremptorily to find against him ought to be denied. Such an instruction is not authorized, unless it appears, that after admitting the testimony offered by the litigant, and every reasonable inference to be deduced from it,

to be true, his cause of action yet fails of having any support. Buford v. L. & N. R. R. Co., 82 Ky., 286; Eskridge v. C., N. O. & T. P. Ry. Co., 89 Ky., 367; Shelby v. C., N. O. & T. P. Ry. Co., 85 Ky., 224; Stephens v. Brooks, 2 Bush, 138; Slaughter v. Morgan, 1 Met., 29; Wotter v. Sanders, 7 J. J. M., 321; Rowland v. Hanna, 2 B. M., 129; Easley v. Easley, 18 B. M., 93; Nelson v. Black Diamond Mining Co., 167 Ky., 676. Without undertaking to state the evidence, in chief, for appellee with particularity, it will suffice to say that appellee offered evidence, which conduced to show that the crossing, at which decedent was killed, was in a suburb of the city of Paducah, and was where a public highway crossed the railroad track; that about one hundred and twenty-five families lived in close proximity to it and the travel over it was considerable; that upon the side upon which decedent approached the crossing, at the time he was killed, the woods approached very closely to the track, and obstructed the sight of a train, which was coming from the direction in which the train complained of was approaching, from one approaching the track as decedent did, until he should arrive within ten or fifteen feet of the track, when it could be seen, if it was close. A woman, who was in the buggy with decedent, testified that no warning was given by the train of its approach by either sounding the whistle or ringing the bell; that they were driving at a moderate speed, and that she did not see the train until the horse started to go upon the track; that she did not hear the train, although she was listening for it. Other evidence tended to prove that the train was nearly one hour behind its scheduled time, and was running at the rate of forty-five or fifty miles an hour; that no check occurred in its headway until after the collision; that the horse which was attached to the buggy had passed over the railroad track when the engine collided with the rear of the buggy, with such force that decedent was, by the momentum of the contact, hurled sixty feet, and his body striking a fence, broke down the fence and one of the posts which supported it. Decedent was about sixty years of age, and his weight was about two hundred pounds.

There was evidence from some of appellee's witnesses to the effect that the customary signal for the crossing was given by the train, as it approached, and also, for a crossing which it passed before arriving at

the Husband's Crossing. In connection with this last mentioned evidence must be considered the rule, "wherever, in support of a cause of action, evidence is offered, the weight of which it is the province of the jury to determine, a peremptory instruction to find for the defendant should not be given."

This court has uniformly adhered to the doctrine, that in places, where the presence of persons upon the railroad tracks must be anticipated, it is the duty of the railroad company, in the operation of its trains, to keep an effective lookout, maintain a reasonable rate of speed, and have some person in a place where he can control the movement of the train. L. & N. R. R. Co. v. Johnsons' Admrx., 161 Ky., 832; C., N. O. & T. P. Ry. Co. v. Akerman, 148 Ky., 435; C., N. O. & T. P. Ry. Co. v. Miller's Admr., 151 Ky., 499; L. & N. R. R. Co. v. Bayes' Admr., 142 Ky., 400; Cason's Admr. v. Covington Railroad, 29 R., 352; Conley's Admr. v. Cincinnati Railroad, 89 Ky., 402; Shelby's Admr. v. Cincinnati R. R., 85 Ky., 224; I. C. R. R. Co. v. Murply's Admr., 123 Ky., 787; L. & N. R. R. Co. v. McNary's Admr., 128 Ky., 420. The reason for requiring the train, where the presence of persons upon the track must be anticipated, to be operated at a reasonable rate of speed, is to enable the employes on the train, when an individual is discovered in peril, to stop or slacken its speed, so that the person in peril may escape or be saved. A lookout would be useless, if the train was not under a reasonable degree of control, so that it could be stopped in time to save the life of the one in peril.

We conclude that the court did not err in denying the motion of appellants for a direct verdict in their favor at the conclusion of appellee's testimony.

The motion for a direct verdict was renewed at the close of all the testimony, and it is insisted that the court was in error in granting it.

At this stage of the trial the appellee was entitled to the benefit of any facts which were developed by the appellants' evidence, as well as the facts appearing from his own evidence. Nelson v. Black Diamond Mining Co., 167 Ky., 681.

Evidence was given by a number of witnesses to the effect that the signal for the Husband's Crossing was properly given, though some of the witnesses said the signal they heard was four whistles, and others heard

only two. One or more of the witnesses heard the signals given for the other crossings, which were within a mile, but did not hear the signal for Husband's Crossing. The engineer and fireman testified that the signals were given by the whistles and the bell had been ringing constantly for twenty-five miles, and on up to the time of the collision, but no other witnesses heard the bell. The engineer said that he was operating the train at about forty-five miles per hour, and was sitting in the cab looking along the track, but did not see the decedent until the engine was within ten feet of him. The horse was then over the right hand rail. The horse came upon the track upon the opposite side to him. The fireman was not keeping any lookout upon his side of the cab, but was at that time replenishing the fire in the locomotive. Other evidence tended to prove that the decedent was driving rapidly, and had taken a drink of whiskey and was apparently slightly under the influence of liquor about eleven o'clock in the morning of the day, and he was killed at about 4 o'clock P. M. He had, also, drunk a bottle of beer a short time before he was killed. Only one witness claimed to have seen the collision. He testified that he was on the opposite side of the railroad track from where decedent came up to the track; that he heard the signal for the crossing, which was given when the train passed a crossing before arriving at Husband's Crossing, and saw the train; that decedent came at a pretty good gait, and that neither he nor the woman looked in any direction, that the witness observed, decedent made no stop, and neither did the train, and just as the horse got across the track, the train struck the buggy.

It is insisted by appellant, that, although their employes may have been negligent in operating the train at an unusual and dangerous rate of speed at a place where it was their duty to anticipate the presence of persons upon the track and to keep a lookout and to operate the train at a reasonable rate of speed, so as to have it under control, a peremptory instruction to find for them ought to have been given, because the decedent was negligent in going upon the track without using ordinary care for his safety, and that his negligence in failing to look out for the train before going upon the track was the sole and proximate cause of his death.

It was the duty of decedent, in crossing the railroad track, to exercise such care for his own safety as an ordinarily prudent person would be reasonably expected to exercise under the same or similar circumstances.   If he failed to exercise such care he was negligent, and if his death would not have resulted but for such negligence of himself, the appellee should not recover. Smith's Admr. v. C., N. O. & T. P. Ry. Co., 146 Ky., 571; Southern Ry. Co. v. Winchester's Exor., 127 Ky., 144.   The train was about one hour behind its scheduled time and was being operated at a rate of speed of about seventy feet to the second, at a place where the presence of persons upon the track must be anticipated.   It has been repeatedly held by this court, that the rule, stop, look and listen, is not the law in this State.   Where the decedent was killed was a place in constant use by the public.   The evidence to establish the facts necessary to support the plea of contributory negligence in this case does not all conduce to prove the existence of such facts.   As stated, the woman who accompanied the decedent, testified that no signal of the approach of the train to the crossing was given.   While the testimony to the contrary might, in our opinion, greatly outweigh that given to prove the absence of the signals for the crossing, the weight to be given to the testimony was a matter within the province of the jury, and the court could not arbitrarily invade it.   In the case of L. & N. R. R. Co. v. Miller, 134 Ky., 722, it was insisted that a direct verdict ought to have been required for the railroad company, because Miller failed to look along the track before attempting to cross it.   The court said:

"We have uniformly held that at places like this, it is a question for the jury, whether the traveler exercised ordinary care, where the train is run at a dangerous rate of speed, or timely warning of its approach is not given, or a proper lookout is not maintained.   Crowley v. L. & N. R. R. Co., 55 S. W., 434; L. & N. R. R. Co. v. Lowe, 118 Ky., 260, 80 S. W., 768; L. & N. R. R. Co. v. Lucas, 120 Ky., 359, 86 S. W., 682; Davis v. Louisville, &c. Ry. Co., 97 S. W., 1122; Perkins v. C. & O. Ry. Co., 123 Ky., 229, 94 S. W., 636; L. & N. R. R. Co. v. McNary's Admr., 128 Ky., 408, 108 S. W., 898."

The place referred to in L. & N. R. R. Co. v. Miller, *supra,* was a populous community and the place where the injury occurred was one constantly used by the pub-

lic. When an individual is injured at such a place by a railroad train, which is being operated at a dangerous rate of speed, or where timely warning of its approach is not given, or when an effective lookout is not maintained, the question of whether or not the injured one exercised ordinary care for his safety oftentimes depends upon many facts, which, even if admitted to be true, may, when considered by reasonable men of like intelligence and judgment, lead them to different conclusions. In such states of case, the question is for the jury. It is therefore concluded that the court did not err in overruling the motion of appellants for a direct verdict in their favor at the conclusion of all the testimony.

The judgment is therefore affirmed.